WASHBURN & MOEN MANUF'G CO. *v.* SOUTHERN WIRE CO.

*(Circuit Court, E. D. Missouri, E. D.   January 28, 1889.)*

1. PATENTS FOR INVENTIONS—LICENSES—COVENANT TO UPHOLD PATENT.
    Where a patentee is doing a large and profitable business in the manufacture and sale of the patented article, and his patents have been infringed, a covenant in a license granted by him to manufacture and sell such article, that the licensee will give his co-operation in properly maintaining the business and the patents, binds the licensee to assist in all lawful ways in suppressing and preventing the infringement of the patent.

2. SAME.

> Though the covenant does not oblige the licensee to continue the manufacture and sale of the article for any specified period, or deprive him of the right of retiring from business and selling his plant, it is still a continuing obligation, which the licensee's abandonment of the business will not release.

3. SAME.

> A sale by the licensee of his plant with knowledge that the purchaser intends to employ it in violation of the patent, and with intent to aid him therein, is a breach of the covenant.

At Law.    On demurrer to the petition.

This was an action at law to recover damages for an alleged breach of a covenant contained in a license to manufacture and sell barbed fence-wire, granted by the plaintiff to the defendant on November 25, 1885. In consideration of the license granted, defendant, among other things, covenanted that it would pay the royalty reserved therein, and make monthly reports of the amount of wire by it manufactured and sold, and "that it would faithfully carry out and perform all and each of the terms and conditions set forth in said license, and would give to said Washburn & Moen Manufacturing Company its co-operation in properly maintaining the barbed-wire business, and the patents under which said license was granted." The act charged as amounting to a violation of the last-recited covenant consisted in a sale made by the defendant to a corporation known as the "St. Louis Wire-Mill Company," "of its plant, machinery, stock in hand, good-will, and business," including orders for barbed wire then on hand. The petition alleged, in substance, that the St. Louis Wire-Mill Company was not authorized to manufacture, use, or sell barbed wire made in accordance with the patents owned and controlled by plaintiff, and under which defendant had operated in conformity with its license up to the date of the alleged transfer; that such fact was well known to defendant at the time of the sale; and that the sale was intentionally made by the defendant to enable the wire-mill company to engage on a large scale in the manufacture of unlicensed barbed wire, in violation of plaintiff's rights, and with the intent of enabling persons, not duly licensed, to make, use, and vend barbed wire in violation of plaintiff's patents, and to its injury, and in competition with its business, and the business of its licensees. The petition also averred that some of the defendant's stockholders and officers were also stockholders and officers of the St. Louis Wire Mill Company and controlled the same, and that the sale complained of was a mere scheme on the part of such individuals holding office in both companies to violate and evade defendant's covenant and obligations expressed in the license. The petition also alleged in effect that when the license was executed a large demand had grown up throughout the west for barbed fence-wire made in conformity with the patents owned or controlled by plaintiff; that plaintiff was at the time manufacturing wire in large quantities to supply such demand, and was doing a very profitable business in that line; that certain unlicensed manufacturers of wire had theretofore from time to time pirated its inventions and improvements in barbed wire; and that all such facts were well known to the defendant. The fourth count

of the petition containing the averments aforesaid was demurred to on the ground that it showed no breach of the covenant "to give its co-operation," etc.

*Hitchcock, Madill & Finkelnburg*, for plaintiff.

*J. R. Bennett* and *Dyer, Lee & Ellis*, for defendant.

THAYER, J., (*after stating the facts as above.*) I have no doubt that the covenant involved in this case bound the defendant, and was intended to bind it, to co-operate with the plaintiff in all lawful ways in suppressing the manufacture and sale by unlicensed persons of barbed fence-wire that infringed plaintiff's patents. The covenant " to give the Washburn & Moen Manufacturing Company its co-operation in properly maintaining the barbed-wire business, and the patents under which the license to defendant was granted," must be construed in the light of all of the circumstances alleged to have existed when the same was executed. In view of the allegations in the petition to the effect that plaintiff, by virtue of its exclusive rights under its letters patent, was doing a large and profitable business in the manufacture and sale of barbed wire when the license was granted, and was interested in maintaining its exclusive rights, and that certain persons had theretofore from time to time infringed its patents, it is manifest that in stipulating for the co-operation of its licensee in maintaining the barbed-wire business, and the patents under which the license was granted, the plaintiff bargained for aid in suppressing unlicensed traffic in such barbed wire as was covered by its patent. The licensor and licensee unquestionably regarded the prosperity of the business in which they were engaged, or were about to engage, as largely dependent upon the rigid enforcement of the exclusive right to manufacture certain styles of barbed fence-wire, which plaintiff claimed under and by virtue of its patents. In all probability, when the licensor and licensee executed the license, they contemplated maintaining the barbed-wire business, mainly by a rigid enforcement of such exclusive rights, and by a diligent prosecution of infringers. For these reasons I conclude that the chief obligation assumed by the defendant, when it executed the covenant in question, was an obligation to co-operate or assist in all lawful ways in preventing infringements of the barbed-wire patents that are enumerated in the license.

I concur with defendant's counsel in the view that the covenant "to co-operate in properly maintaining the barbed-wire business and patents" did not obligate the defendant to continue the manufacture and sale of barbed wire during the life of the license, or for any specified period; and that it did not deprive the defendant of the right to retire from business, or necessarily deprive it of the right to sell its machinery, plant, stock in trade, etc. Nevertheless it is obvious that the agreement to co-operate in maintaining the business and patents in question was a continuing obligation, and that the defendant was not released therefrom merely by abandoning its business operations under the license. Such being, in my opinion, the proper construction of the covenant, the only doubtful question in the case is whether the alleged sale by the defend-

ant to the St. Louis Wire-Mill Company of its machinery and plant for the production of barbed wire, together with its stock in trade and unfilled orders, amounted to a breach of the covenant by reason of the fact that defendant knew, as the plaintiff avers, that the wire-mill company was an unlicensed manufacturer of barbed wire, and intended to employ the machinery, plant, and other property so acquired, in a manner that would violate plaintiff's asserted exclusive rights and privileges under its patents. A careful analysis of the fourth count of the petition, to which the demurrer relates, shows very clearly that no act is charged therein amounting to a breach of the covenant, unless the sale made by the defendant of its machinery and plant with the knowledge aforesaid, and with an intent on its part, as alleged, to aid the wire-mill company in the production of unlicensed wire upon a large scale, amounts to such breach. It is true that in actions *ex contractu* it is usually unnecessary to inquire with what knowledge or intent a given act was done, in order to decide whether it amounted to a violation of the agreement sued upon. It is ordinarily the case that if an act, considered by itself, does not amount to a breach of an agreement, the knowledge or intent with which the act is done will not render it unlawful. This result is due, I apprehend, altogether to the nature of ordinary covenants and agreements, and to the language in which they are expressed. I know of no reason, however, why parties may not put their engagements into such form as to render an inquiry into the knowledge with which a given act was done, and the motives that prompted it, both legitimate and necessary, even in an action *ex contractu*. It appears to me that the covenant now under consideration is of the character last indicated. The defendant bound itself to co-operate, that is, to act jointly or in concert with plaintiff, in maintaining the barbed-wire business and certain patents. That covenant necessarily implied that it would not, knowingly and intentionally, give aid and comfort to a class of barbed-wire manufacturers whom the licensor and licensee evidently had in mind, and regarded as the common enemy, when the license was granted. It certainly implied that defendant would not place machinery and tools that were specially adapted to the production of the patented article in the hands of the enemy, with knowledge that they were to be used in the production of unlicensed wire, and with intent to aid in the production. I accordingly conclude that the allegations in the fourth count of the petition, as to the knowledge and intent with which the defendant sold its machinery and plant, are material, and that the count, by reason of such allegations, states a good cause of action. Either this view should be taken, in my opinion, or the other view ought to be adopted, that defendant, before making the sale in question, was bound to provide at its peril that the machinery and plant were not employed in the production of infringing barbed wire. According to either view the demurrer should be overruled, and it is so ordered.