AMERICAN GRAPHOPHONE CO. v. UNIVERSAL TALKING MACH. MFG. CO.

SAME v. AMERICAN RECORD CO.

(Circuit Court of Appeals, Second Circuit. January 14, 1907.)

Nos. 87, 94.

1. PATENTS—INVENTION—EVIDENCE.

Where an existing process or device discloses what appear to be insuperable objections to practical operation, it is persuasive evidence of invention that an improver has the foresight and courage to break away from such disclosure and conceive of some new method involving a different principle; but it is also evidence of invention if one, by taking a step forward, sees that what appeared to be barriers to progress are mere obstructions to side paths and byways, and that the road to a practical invention lies straight ahead.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 38, Patents, §§ 16, 17.]

2. SAME.

Where the question of invention is still left in doubt after the application of the usual negative tests to establish want of invention, such doubt may be resolved in favor of the patent by evidence of successful results where others had tried and failed, especially where such success is in both operative and commercial results.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 38, Patents, § 40.]

**5. SAME—PROCESS FOR MAKING SOUND RECORDS.**
> The Jones patent No. 688,739, for a method of producing sound records for use in talking machines of the gramophone type, which consists in cutting or engraving a record groove of uniform depth, by means of the lateral vibrations of a suitable stylus, upon a disk of waxlike material, coating the same with a conducting material, and then forming a matrix thereon by electrolysis, from which the duplicate records are made by impression, was not anticipated by anything in the prior art, and discloses patentable invention. Also *held* infringed.

Appeals from the Circuit Court of the United States for the Southern District of New York.

For opinions below, see 145 Fed. 636, 643.

These causes come here upon appeals from decrees of the United States Circuit Court for the Southern District of New York, dismissing bills alleging infringement by defendants of complainant's patent No. 688,739, granted December 10, 1901, to Joseph W. Jones, for a process of producing sound records. The opinions of the court below are reported in 145 Fed. 636, 643.

Philip Mauro and C. A. L. Massie, for appellant.
Horace Pettitt, for appellee Universal Talking Mach. Mfg. Co.
Samuel Owen Edmonds, for appellee American Record Co.

Before WALLACE, LACOMBE, and TOWNSEND, Circuit Judges.

TOWNSEND, Circuit Judge. The court below, upon a well-considered and exhaustive discussion of the patented process and of the prior art, and of the other evidence, held that the patent disclosed a patentable process, but said as follows:

> "The step by which the tablet is cut into or engraved by the lateral movement of the stylus, instead of such undulations being traced or etched, was perhaps a step forward. Old ideas and suggestions, however, which are found in prior publications, were used to produce the better result. This achievement did not involve the ingenuity of an inventor, but comes within the limit of the skilled in that class of workmanship. What the patentee accomplished is thought to fall within the rule laid down in the following cases: Locomotive Works v. Medart, 158 U. S. 68, 15 Sup. Ct. 745, 39 L. Ed. 899; Smith v. Nicholls, 88 U. S. 112, 22 L. Ed. 566; Pennsylvania Company v. Locomotive Company, 110 U. S. 490, 4 Sup. Ct. 220, 28 L. Ed. 222."

The facts chiefly relied on to support this conclusion as to invalidity of the patent are the following:

The patented process applied to cylindrical records of varying depth was described and shown in the prior Young patent, which purported to cover "improvements in connection with (inter alia) gramophones," thus, it is claimed, implying the process applied to a disk. The prior Edison British patents referred to phonograms "in the form of a disk, * * * and the marks are to be either in straight lines, spiral, zigzag, or in any other convenient form," and stated that "the reproduction of the phonogram from a matrix * * * may be made upon a * * * plate."

The prior unexpired Bell & Tainter patent, No. 341,214, was, broadly, for the process of cutting or engraving sound records in wax. One of the claims of said patent was as follows:

"9. The method of forming a sound or speech record which consists in engraving or cutting the same in wax or a wax-like composition, substantially as described."

And it is argued, and Berliner testified, that—

"this whole matter of cutting a gramophone record directly in wax or other solid material was thoroughly familiar to all of us, but on account of the very broad scope of the Bell & Tainter patent no attempt was made to make such records for commercial use, because we felt sure that the Bell & Tainter patent would be sustained against them."

But even if, for the sake of the argument, we assume the correctness of the assertion of the complainant, in this record and otherwise, as to the broad scope of said Bell & Tainter patent and the effect of its disclosures, it is clear that no actual inventor of the improvement covered by the patent in suit would have been deterred by any such apprehensions from applying for a patent for such improvement. In fact, no such excuse appears to have been thought of or suggested by counsel or experts for defendant in the suit against the defendant, the Universal Company. The court record of the Bell & Tainter patent shows that the would-be improvers upon the art therein disclosed continually and persistently patented and defended constructions which embodied the inventions described therein. The defendant, the Universal Company, commenced its infringement of the patent in suit more than a year before the expiration of the Bell & Tainter patent. And the Bell & Tainter patent did not deter this patentee, Jones, from seasonably filing his application in 1897. In view of the now confessed superiority and commercial success of the product of the patent in suit, it may safely be assumed that its inventor, by obtaining a patent, might at any time have secured, by license or otherwise, a substantial consideration therefor. In any event, he might have applied for the patent, and thus placed himself in a position to commence operations thereunder immediately upon the expiration of the Bell & Tainter patent. And it is a sufficient answer to the testimony of Berliner, quoted above, that he was not in fact deterred by any such considerations when he applied for a patent for the invention in suit before the expiration of the Bell & Tainter patent.

An examination of the Bell & Tainter patent shows that the assumptions as to its broad scope are without foundation. There is not a word of reference in the specifications to the engraving laterally of undulating records, or of any records of uniform depth. And the experience of complainant with said patent, and the evidence as to the experiments of Tainter, one of the patentees, in connection therewith, show that it never served as a disclosure of the process of the patent in suit. Even the complainant, which was the owner of the Bell & Tainter patent, never succeeded in obtaining a practical disk record until it adopted the process of the patent in suit.

As to the prior Edison patents, it is evident, as the court below suggests, that he "had in mind a record of the vertically undulating type." That he never had in mind the flat disk Jones record is sufficiently shown by the failure of defendants to introduce any evidence that he ever applied his invention to the production of such disks.

The arguments based on the prior Berliner patents, as a disclosure of the process of the patent in suit, are sufficiently disposed of by the foregoing considerations, by the finding of the court below that "the series of acts described in the Jones patent produced a definite and useful result essentially different from that described in the patents to Berliner," by Berliner's failure to claim that said patents disclosed said invention, and by his oath in his application for a patent for said process that it was a patentably novel invention, and by the fact that the process of the patent in suit has completely displaced that of the Berliner process.

Futhermore, Berliner, in his Franklin Institute lecture in 1895, described a method of making duplicates from his etched zinc disks, and, stating the objections to practical use, concluded that these objections would shortly be obviated. Ten years later, when he was called as a witness in this suit against the American Record Company, he fails to state that he ever overcame said objections or devised a practical method of duplication, but merely says that, because of the Bell & Tainter patents, "I felt that there was no use in following up a method of cutting a record in wax or other solid material."

The Young British patent, No. 1,487, is manifestly the closest reference in the prior art, for it discloses substantially the process of the patent in suit applied to the production of vertically undulating grooves in a cylindrical record. Referring to said patent, the court below said as follows:

"The skilled artisan doubtless would have had little difficulty in adjusting the various elements so that a flat sound record of the type in question could have been produced without experimentation or the trials of an inventor. I think that the patent not only indicates that the process described might substantially be used in the way pointed out by Jones, but also that the patentee contemplated the application of his invention to the disk record."

But the language of the Young specification would seem to indicate that the patentee, like Edison, had in mind the application of his process to cylindrical records only. The opening statement in the specification is as follows:

"My present invention relates to a method of and a means for reproducing any number of duplicates or counterparts of sound records that have been engraved, indented or otherwise produced upon the rotund or cylindrical recording surfaces of phonographs, gramophones, graphophones," etc.

Furthermore, the steps in the specified process indicate that they are to be taken in connection with a cylindrical record, and involve the destruction of the original and the collapsing of the duplicate, with the consequent risk of injury.

The court below, in a full, fair, and accurate presentation of all the material and salient facts in this case, has held that the patented process produced a novel and useful result, but that it was within the limit of the skilled workman. It is upon this latter point that we feel constrained to differ with the court below. We think that it gave too much weight to the effect of the disclosures of the Young patent. And we conclude, in the light of the prior art, that the changes from Young to Jones involved invention, because, inter alia, Jones was practical, Young was impractical; Young was before the public for six

years before any "skilled artisan" succeeded "in adjusting the various elements so that a flat sound record of the type in question could be produced," and no one prior to Jones saw that it could be adapted to a practical disk record with lateral undulations; there were inherent objections to the practical production of varying depth records, which Jones found did not exist when the known or suggested processes were applied to laterally undulating grooves of even depth.

If further evidence of the patentable novelty of the Jones process be sought, it may be found in the deposition of Charles S. Tainter, a graphic record of unsuccessful efforts, unrealized anticipations, and abandoned experiments. Where an existing process or device thus discloses what appear to be insuperable objections to practical operation, it is persuasive evidence of invention that an improver has the foresight and courage to break away from such disclosure and conceive of some new method involving a different principle; but it is also evidence of invention if one, by taking a step forward, sees that what appeared to be barriers to progress are mere obstructions to side paths and byways, and that the road to a practical invention lies straight before him. The record of the litigations involving the patentability and infringement of the devices employed in this new sound producing art shows that inventors and skilled mechanics were engaged in a struggle to devise and construct improvements upon the existing devices, to overcome the objections to their practical operation, and thus widen their field of use. In the case at bar, it is shown that it did not occur to any one before Jones that the old use of the varying depth process on cylindrical records could be adapted to a new use with a uniform depth process on flat records with a useful and practical result.

The courts have generally found it inadvisable to attempt to define invention, and, concluding that there are no affirmative rules by which to determine its presence or absence in every case, have recognized and applied certain negative tests to establish want of invention. Walker on Patents, §§ 24, 29. But where, upon the application of these tests, the question of invention is still left in doubt, such doubt may be resolved in favor of the patent by evidence of successful results where others have tried and failed. This doctrine has not only been repeatedly asserted and applied by the United States Supreme Court, from Loom Co. v. Higgins, 105 U. S. 580, 26 L. Ed. 1177, down to Carnegie Steel Co. v. Cambria Iron Co., 185 U. S. 403, 22 Sup. Ct. 698, 46 L. Ed. 968, but by this court in numerous decisions, where, as in the case at bar, it was argued that the means provided were so simple and obvious that they could not have involved invention. A few of these cases will illustrate the lengths to which this court has gone in applying this principle.

In Singer Mfg. Co. v. Schenck, 77 Fed. 841, 844, 23 C. C. A. 494, this court said as follows:

"In view of the prior state of the art thus exhibited, it seems now to have been a very simple thing to do what was done by the patentees. * * * But the record in this case affords extrinsic evidence of a most convincing kind that what was done by the patentees was not an obvious thing, and that the change of organization was not one which the skilled mechanics of the par-

ticular art could have suggested and introduced without the exercise of inventive faculty. This evidence is supplied, not only by the many patents for improvements, which fell short of producing the simple, compact, less expensive, and more efficient bearings of the patent, but by the sterility, during 20 years, of the great army of mechanics employed by the various sewing-machine manufacturers."

In Brunswick v. Thum, 111 Fed. 904, 50 C. C. A. 61, the patent covered merely an upgrade portion inserted in a bowling-alley returnway. There the court said as follows:

"The improvement consists in an extremely simple, and, it would seem, perfectly obvious, application of common knowledge as to the law of gravitation. Were there nothing in the record but the bare statement of facts above set forth, we would be inclined to concur with the court below in the proposition that, 'had any skilled mechanic been asked to perfect a structure that should gradually arrest the momentum of the returning ball, an ascent would obviously have been the structure needed.' But in this case, as in the Singer Case, the evidence shows conclusively, and indeed without contradiction, that this very demand for an arrester of the returning ball was before skilled mechanics for many years, and yet no one before Reisky hit upon the device, which now seems so obvious."

In George Frost Co. v. Cohn, 119 Fed. 505, 56 C. C. A. 185, where the invention consisted in the substitution of a button of rubber or similar material for a metal button in a hose supporter, this court said as follows:

"Whether the feature of novelty is the employment of a new material, or a change of adaptation in other respects, the inquiry always is whether what was done involved the exercise of inventive faculty as distinguished from the ordinary skill of the calling. When the substitution has accomplished a result which those skilled in the art had long and vainly sought to effect, the evidence that it involved something beyond the skill of the calling is so persuasive that it generally resolves the inquiry in favor of patentable novelty. Applying that rule to the present case, we conclude that the patent in suit, as regards the claim in controversy, is not valid for want of patentable novelty."

Upon the same ground, in Brown v. Huntington Piano Co., 134 Fed. 735, 67 C. C. A. 639, this court sustained a patent for a minor improvement in making the adjustment of a music desk on a piano automatic; and in Rumford Chemical Works v. Baking Co., 134 Fed. 385, 67 C. C. A. 367, the patent was sustained where the change from the prior art consisted in substituting granular for pulverulent material in baking preparations.

In these circumstances, the disk produced by the patented process responds to the test of success where others have failed. But, in addition to this inventive success, it is also a commercial success. And this success is not subject to the criticism that it is due to extensive advertising, or the attractive manner of placing the articles before the public, or "the energy with which they were forced upon the market." McClain v. Ortmayer, 141 U. S. 419, 428, 12 Sup. Ct. 76, 35 L. Ed. 800. Nor is the disk merely such an element of a device that its sales may be ascribed to the popularity of other elements thereof, or of the entire organism. Doig v. Morgan, 122 Fed. 460, 59 C. C. A. 616. The patentable novelty of the process of the patent is not only indicated by large sales, but also by the unassailable evidence of that most sincere form of flattering recognition, namely;

imitation and appropriation by rival manufacturers. In short, it has so far supplanted all other methods previously used that apparently all disk records are now made by said process, and complainant's chief competitor admits that it has discarded its own patented etching process and has substituted therefor the process of the patent in suit. The validity of the patent is thus established by commercial success, resultant solely from inventive success, and such extensive public use as to supersede disks made by other processes, which is "pregnant evidence of its novelty, value, and usefulness." Magowan v. New York Belting & Packing Co., 141 U. S. 332, 343, 12 Sup. Ct. 71, 35 L. Ed. 781.

As to the objections raised that the patent in suit covers a mere mode of operation, we concur in the conclusion of the court below that the process of the patent in suit was a patentable one.

The contentions in support of the defense of noninfringement do not require extended discussion. The defendant, the Universal Company, denies infringement, under a claim that its tool does not cut or engrave its soft material, but displaces it. It does not appear from the evidence that defendant does not use the patented process in making its commercial records. The result of an inspection thereof indicates that they are formed by "cutting or engraving upon a tablet of suitable material by means of * * * a suitable stylus," as claimed in the patent in suit. Therefore, as this court said in Hemolin Co. v. Harway Co. (C. C.) 131 Fed. 483, 487, "if the defendants can prove to the contrary, they should do so."

The defendant, the American Record Company, denies infringement, on the ground that it does not impress the matrix of the patent "into a tablet of suitable material," because it interposes a process of making an additional matrix, not included in the patented process, and impresses this additional matrix into the material. In effect, it claims that although it employs the first processes of the patent to make the matrix and the last process of the patent to make the commercial record, yet because of the interposition of a superfluous additional duplicating process it escapes infringement. It is unnecessary to refer to the authorities that such a claim is without merit.

The decrees are reversed, with costs, and the causes are remanded to the court below, with instructions to enter decrees for injunctions and accountings in accordance with this opinion.