CAMPBELL v. AMERICAN SHIPBUILDING CO.

(Circuit Court of Appeals, Sixth Circuit. April 5, 1910.)

No. 1,976.

1. PATENTS (§ 168*)—CONSTRUCTION—PROCEEDINGS IN PATENT OFFICE.

Where an applicant for a patent acquiesces in the rejection of claims presented, and amends the same or substitutes others to meet the objections of the Patent Office, he must be deemed to have surrendered and disclaimed what he thus conceded, and is bound by the limitations so imposed, and it is immaterial whether the office was right or wrong in rejecting the original claims.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 244; Dec. Dig. § 168.*]

2. PATENTS (§ 328*)—INFRINGEMENT—CARGO VESSEL.

The Campbell patent, No. 675,812, for a cargo vessel, as limited by the proceedings in the Patent Office, held not infringed.

Appeal from the Circuit Court of the United States for the Northern District of Ohio.

Suit in equity by James Campbell against the American Shipbuilding Company. Decree for defendant, and complainant appeals. Affirmed.

W. L. Pierce, for appellant.
Charles Neave, for appellee.

Before SEVERENS, WARRINGTON, and KNAPPEN, Circuit Judges.

WARRINGTON, Circuit Judge. This is a suit for infringement of patent issued to James Campbell under date of June 4, 1901, No.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

675,812, for improvement in navigable vessels. The answer comprises denials of utility, infringement, and the quality of invention, and averments of anticipation through various patents of the United States, Great Britain, and France, and also averments of amendments made of the application while pending in the Patent Office, whereby Campbell is estopped from claiming that defendant's vessels are within the scope of the patent. The latter defense was sustained in the court below, and the cause is pending here on appeal.

If the conclusion reached by the learned trial judge shall prove to be correct, it will be unnecessary to determine any of the other issues made in the pleadings. The patentee states in his specification:

"This invention relates to navigable vessels, its object being the construction at a moderate cost of a strong vessel capable of carrying heavy cargoes, and in particular iron ore, in such a manner that no part of the cargo shall be screened from the action of the discharging apparatus by any part of the hull. According to this invention a trunk or hopper is constructed in the vessel extending from the stoke-hold bulkhead of the machinery space, which preferably should be situated in the stern, or where a cross-bunker bulkhead is fitted from the forward cross-bunker bulkhead forward to the collision bulkhead, or as far forward as the form of the ship will permit. Where the engines are amidships, two or more longitudinal trunks or hoppers may be provided. To obviate the loss of strength which otherwise this construction would involve, owing to the absence of hold and deck beams, it is proposed to make the trunk or hopper bulkheads of substantial construction, by introducing into them heavy plating and numerous stiffeners, and also to connect these bulkheads to the main frames of the vessel and to the side plating by beams of heavy scantling and by thick deck-plating and stringers. There may be weather and partial 'tween-decks. It is preferred that the two sides of the ship alongside the trunk or hopper should be of sufficient strength in themselves and independently of the strength of the trunk to sustain all local stresses likely to be brought upon them. The spaces in the wings between the side of the trunk and the inner face of the skin-plating, being bounded by strong structures, can conveniently be utilized to contain water ballast, which may be placed above the partial 'tween-decks where desired. Hatch tie-beams of great depth securely, but in most cases removably, connected to the hatch coamings, which are of appropriate strength and connected to the weather deck, are provided at frequent intervals along the trunk to prevent it from separating or panting under the longitudinal stresses likely to be set up on the loaded vessel in a seaway. Plate hatch covers extending over the whole length of the trunk may also be employed to contribute to this end. In certain cases the interior of the trunk will be altogether unobstructed; but, if necessary, strong tie-beams or girders can extend across it—say about amidships—at the level of the partial 'tween-decks; these being protected from the action of the discharging gear or from the cargo during loading by sloping transverse bulkheads or deflectors."

It was plainly the object of the inventor so to design and construct a vessel as to avoid the need of stanchions, beams, and the like within the cargo hold and also of permanent hatch tie-beams. The loss of strength, which the omission of these supports would engender, was to be made up by strong trunk bulkheads, and by making the two sides along the trunk of substantial construction. In short, the idea was to construct one vessel of a given size within another of larger size, and so to strengthen the connections between them as to compensate for the omission of supports within the hold itself, and further to strengthen the whole structure by hatch tie-beams, in most cases removable, and by plate hatch covers when necessary. In the original specification the inventor included five claims, as follows:

"1. A cargo vessel substantially as described and illustrated in the accompanying drawings.

"2. In a cargo vessel, the combination with an open trunk, such as A, of strong sides, such, for example, as shown at D, E, and F, Fig. 3, capable without support from the trunk or center of the vessel of supporting all local stresses to which they are subject.

"3. In a cargo vessel, a trunk or hold, such as A, having clear side walls, such as E, whereby no part of the cargo therein is screened from the action of the discharging apparatus, substantially as described.

"4. In a cargo vessel, the combination of an open trunk, such as A, a double bottom, C, and double sides, such as D, E, substantially as described and illustrated in the accompanying drawings.

"5. In a cargo vessel, a double side, such as H, whereby the side itself is rendered sufficiently strong to sustain all local stresses likely to be brought upon it."

These claims were all abandoned, and in order to ascertain the true meaning of the letters patent, as finally issued, we shall have to trace the history of the application in the Patent Office. The application was filed August 27, 1900. The Commissioner rejected all the claims on September 18, 1900, upon reference to the Shone patent, No. 424,508, dated April 1, 1890. On January 23, 1901, Campbell filed three amendments in the Patent Office; two relating to the specification, and the third substituting a new single claim for the five claims rejected. The first amendment as inserted at the time is shown within brackets as follows:

"A represents the trunk or hopper [having continuous vertical and parallel side walls, and] which, as shown by Figs. 1 and 3, is entirely open and accessible, though it may, if desired, be provided with fixed or removable hatch ties, B, as indicated in Fig. 2."

The second amendment was inserted at the end of the original specification, and is as follows:

"From this construction it results that in unloading the cargo the discharging bucket or other apparatus can pass up the vertical side walls of the hold without meeting any overhanging obstruction, so that any cargo lying close against these side walls can be readily got at. It will be seen, also, that the side walls of the hold being parallel throughout their length, the hatchway coamings may be utilized as rails for a traveling discharging apparatus, or rails may be secured to the deck beside these coamings, so that the apparatus may travel without interruption from end to end of the cargo space."

The third amendment, consisting of the new claim, was inserted under direction of Campbell to "erase the (original) claims and insert" instead:

"A cargo·vessel having the double sides and bottom, and a central longitudinal trunk or hold unobstructed from front to rear, and having vertical parallel side walls, substantially as and for the purpose set forth."

On January 29, 1901, the Commissioner rejected this claim, with this statement:

"The claim presented in the amendment of recent date is believed to be met by Corey et al., No. 100,606, March, 1870, 'Ships, Building,' in connection with the patent to Shone, of record, which shows double-bottomed sides. Corey et al. shows a central, longitudinal hold, unobstructed from front to rear and having vertical parallel side walls, and also a series of elastic air tubes forming a double bottom and hull, and to make these continuous, as shown by Shone would not involve a matter of invention, for which reason said claim is believed to be met in terms and is accordingly rejected."

Thereupon, February 5, 1901, Campbell instructed the Commissioner to amend the new claim by erasing the word "parallel" and inserting after the words "side walls" the words "parallel throughout their entire length." On February 14, 1901, the claim as thus amended was rejected on reference to the Shone patent in connection with Jones patent, No. 221,412 of November 11, 1879. On March 16, 1901, Campbell again amended the claim by directing the insertion, immediately after the amendment of February 5th, of the words "and unobstructed from bottom to top." The claim was thereupon allowed by the Commissioner, and as so finally amended is as follows:

"A cargo vessel having the double sides and bottom, and a central longitudinal trunk or hold unobstructed from front to rear, and having vertical side walls parallel throughout their entire length and unobstructed from bottom to top, substantially as and for the purpose set forth."

What, then, is the true significance of the amendments? What, if any, limitations and restrictions do they impose? The rejection of the original claims was based upon the Shone patent, as before stated. That patent provides for a ship with an outer and inner hull, with intervening space in which either water or freight may be carried. The regular cargo hold is within the inner hull, with vertical sides, and with a number of cross bulkheads. This hold is given the shape of the bow as it approaches that portion of the vessel; in other words, it has not parallel sides throughout its length. This was met by the first amendment of the specification, which provided for continuous vertical and parallel side walls. The second amendment of the specification discloses two distinct features. One is that the unloading device "can pass up the vertical side walls of the hold without meeting any overhanging obstruction." The other is "that, the side walls of the hold being parallel throughout their length, the hatchway coamings may be utilized as rails for a traveling discharging apparatus, or rails may be secured to the deck beside these coamings, so that the apparatus may travel without interruption from end to end of the cargo space."

Two amendments of the new claim, were, however, exacted and made before the examiner appears to have been satisfied that it was in correspondence with the features just pointed out. The first amendment of the new claim required that the side walls of the cargo hold should be vertical and parallel, not merely part of their length, but "throughout their entire length," and the second one required that the side walls should be "unobstructed from bottom to top." When these amendments are read in connection with the first amended claim, it will be seen in the first place that the shape of the new hold is defined with exceptional clearness and imperative exaction. It must be a "central longitudinal trunk" extending "from front to rear," with "vertical side walls parallel throughout their entire length." In the next place, freedom from obstruction is made equally peremptory. The hold shall be "unobstructed from front to rear," and the side walls shall be "unobstructed from bottom to top." Since the mere form of a thing patented can be made of its essence, it would be difficult to conceive of language more clear and distinct, or more calcu-

lated than this is to accomplish such a purpose. Werner v. King, 96 U. S. 218, 230, 24 L. Ed. 613.

These latter requirements, like the others, were based on references to specified patents. These, in the judgment of the examiner, like the Shone patent in the first instance, were sufficient to warrant his rejections, and the effect was to induce Campbell to meet them with satisfactory amendments. It is not necessary to examine those patents with any purpose either of defining the prior art or of otherwise justifying the action of the Patent Office. It is sufficient that Campbell acquiesced in the rulings, instead of taking the prescribed course of appeal.

In Safety Oiler Co. v. Scovill (C. C.) 110 Fed. 203, 205, Judge Coxe said:

"The contention that the patentee was not called upon by anything in the prior art to limit the claim as stated is wholly immaterial, where there is no escape from the conclusion that he has so limited it. The law in such circumstances is too plain to admit of doubt."

In Brill v. St. Louis Car Co. (C. C. A., 8th Cir.) 90 Fed. 666, 668, 33 C. C. A. 213, 215, Judge Thayer said:

"It is immaterial, we think, whether the Patent Office was right or wrong in rejecting the complainant's original claims on the ground that the invention therein described was anticipated by the prior art. By amending his specification and claims, the complainant admitted, in effect, that some limitations were necessary; and it is now too late to assert that he was entitled to his original claims, or that the claims as finally allowed are as broad as the original claims."

In American Stove Co. v. Cleveland Foundry Co. (C. C. A., 6th Cir.) 158 Fed. 978, 983, 86 C. C. A. 182, 187, Judge Severens said:

"The applicant had a long struggle in securing his patent, and was constrained to trim away, modify, and otherwise define his specifications and claims to meet the references made by the office until they were brought within very narrow limits, before his patent would be allowed. He must be deemed to have surrendered and disclaimed what he conceded, and to have imposed such definitions upon the language of the patent as he attributed to it in order to secure the grant."

In Morgan Envelope Co. v. Albany Paper Co., 152 U. S. 425, 429, 14 Sup. Ct. 627, 629, 38 L. Ed. 500, Mr. Justice Brown stated the rule thus:

"It is insisted in this connection, however, that under the words 'substantially as described' the patentee is entitled to claim a band of oval or oblong shape, and that, looking at his specification and drawing in connection with the claim, it is obvious that the latter should be so limited. But the patentee having once presented his claim in that form, and the Patent Office having rejected it, and he having acquiesced in such rejection, he is, under the repeated decisions of this court, now estopped to claim the benefit of his rejected claim, or such a construction of his present claim as would be equivalent thereto."

See, also, Hale v. World Mfg. Co., 127 Fed 964, 967, 62 C. C. A. 596; American Graphophone Co. v. Universal Talking M. Mfg. Co., 151 Fed. 595, 605, 81 C. C. A. 139.

It inevitably follows that the language into which the grant of the present patent was ultimately resolved must be interpreted with constant reference to the limitations and restrictions imposed, and with re-

spect to the matters distinctly excluded through rejection and amend- · ment. As said by Justice Blatchford (if, indeed, further citation were necessary), in Roemer v. Peddie, 132 U. S. 313, 317, 10 Sup. Ct. 98, 99, 33 L. Ed. 382:

"This court has often held that when a patentee, on the rejection of his application, inserts in his specification, in consequence, limitations and restrictions for the purpose of obtaining his patent, he cannot, after he has obtained it, claim that it shall be construed as it would have been construed if such limitations and restrictions were not contained in it."

Again, in Shepard v. Carrigan, 116 U. S. 593, 597, 6 Sup. Ct. 493, 495, 29 L. Ed. 723, it was said:

"Where an applicant for a patent to cover a new combination is compelled by the rejection of his application by the Patent Office to narrow his claim by the introduction of a new element, he cannot after the issue of the patent broaden his claim by dropping the element which he was compelled to include in order to secure his patent."

We may now consider the question of infringement. Defendant, as its name indicates, is a shipbuilding company. The boats constructed by that company, which are said to infringe the patent in suit, are in many respects similar to the boat described in the Campbell patent. We understand it to be conceded that no vessel has ever been constructed according to the Campbell patent, and we must therefore refer to the letters patent for purposes of comparison. Apart from some obsolete boats of defendant, which do not seem to be in controversy, none of defendant's boats has a cargo hold with "vertical side walls parallel throughout their entire length." The holds of all the boats in dispute converge towards the bows. If nothing else were said, it is plain that the hatchway coamings could not "be utilized as rails for a traveling discharging apparatus," nor could rails "be secured to the deck beside these coamings," so that the apparatus might "travel without interruption from end to end of the cargo space."

This would be equally true, if, as claimed, the engines were placed amidships (assuming this to be still allowable) and two longitudinal trunks or hoppers were maintained; for surely each of two holds, no less than one hold, would have to conform to the requirement mentioned, and yet the portion of the hold converging at the bow would quite as clearly prevent the use aforesaid of the coamings or adjacent rails as the same portion would if a single hold were provided and the engines were placed, as it is stated they preferably should be, either forward or aft of the cargo hold. It cannot be rightfully said that the plan described for carrying the discharging apparatus along the coamings or adjacent rails is unimportant, because it will be recalled that this feature was definitely described in the first amendment made. Furthermore, the first amended claim specified "a central longitudinal trunk or hold unobstructed from front to rear." It is true, as before shown, that in rejecting the first amended claim the examiner in substance stated that the Corey patent shows a central longitudinal hold unobstructed from front to rear having vertical side walls, and that to make these continuous as shown by Shone would not involve a matter of invention; but, in view of the fact that this form of unobstructed

trunk was retained in the claim after it was further so amended as to satisfy the examiner, it can hardly be said that such a trunk is not an essential element of the Campbell combination as finally amended.

This amended provision was for one hold, not for two or more holds. It might therefore be hard to reconcile it with the old provision allowing the engines to be placed amidships. But still assuming that right construction might, despite the contradiction, admit of two holds, one forward and one aft of the engines, there is another feature of all of defendant's boats, except the Wolvin, which we think must differentiate them from Campbell's amended design. Those boats all have transverse vertical bulkheads, dividing the holds into a number of cargo compartments. It would be manifestly impracticable to operate any discharging apparatus along the coamings or adjacent rails with such bulkheads interfering at frequent intervals. It is said, however, that the clam-shell grabber could be used to unload the vessels; but that device could be employed for the same purpose respecting a single hold, as well as a plurality of holds. Besides, the contention ignores the obvious purpose of inserting the requirement, at the time the amendment was made, concerning the use of a discharging apparatus to be carried along the coamings or adjacent rails. The insistence of counsel concedes that bulkheads might have been used under the original and rejected claims; but it ignores the fact that one of the reasons for the first rejection must have been that the Shone patent provided for compartment bulkheads, and so anticipated Campbell's original application in this very particular. As pointed out in some of the decisions before cited, Campbell could not, in order to secure his patent, surrender the right to maintain bulkheads and cargo compartments, only to lay claim to the same right after the patent was issued.

But there is another distinction between defendant's boats and the Campbell design that must be noticed. It is found in the last amendment. It will be remembered that one of the amendments required the side walls of the hold to be vertical and parallel throughout their entire length, and that the exaction of the last amendment was that they should also be "unobstructed from bottom to top." This was made necessary, in the opinion of the examiner, by reason of a prior patent. When this provision is considered, in connection with the other provisions of the claim as amended finally, it clearly discloses a purpose to have the hold unscreened and open at the top, certainly when being unloaded. This would be necessary, as shown, also, in the opening paragraph of the original specification before quoted, when operating the discharging apparatus along the coaming or adjacent rails.

Above all, an open trunk is made necessary by the amendment which reads:

"From this construction it results that in unloading the cargo the discharging bucket or other apparatus can pass up the vertical side walls of the hold without meeting any overhanging obstruction, so that any cargo lying close against these side walls can be readily got at."

Now, all of defendant's boats, including the Wolvin, have what is called an "overhang" extending along each side of the cargo hold. It

is testified without apparent contradiction that part of the cargo in the trunk lies underneath this overhang; also that a discharging bucket or other apparatus would not pass up the side walls of the hold without encountering this overhanging construction. Moreover, all of defendant's boats have at frequent intervals deck or tie beams, which form part of the permanent construction and extend across the holds from side to side to strengthen the vessels. Clearly the holds of such vessels could not be converted into open troughs like those described in the Campbell design. Even though the removable hatch tie-beams of the latter design were intended to be and still could be permanently fastened to the sides of the holds, no continuous overhang like that in each of defendant's boats would be present. But enough has been said to differentiate defendant's boats from the Campbell design, unless it be the Wolvin.

The design of the Wolvin is in all respects like that of the rest of defendant's boats, with these exceptions: While its plan contemplated eight bulkheads, only six were originally put in place, and none of these were compartment bulkheads. Two of defendant's witnesses testified that bulkheads were built into the cargo hold later; but the date, if not the fact, of doing this is disputed. We think, however, the preponderance of evidence shows that they have since been put in place; and since the Wolvin possesses other features of difference we regard the temporary omission of the bulkheads as unimportant. The only other difference is that the walls of the Wolvin's cargo hold are not vertical. The hold is narrower at its floor than it is at its top. A projection extends along each side of the hold from the floor for some distance upward, where it slopes outwardly to the sides and widest portion of the hold.

It is earnestly insisted that the fact that the side walls of the Wolvin are not vertical is of no importance. Ordinarily this would be true, as in principle laid down in one of the cases relied on by plaintiff's counsel. Winans v. Denmead, 15 How. 330, 14 L. Ed. 717. No rejection or amendment, however, was made of the application in that case, and consequently no restriction imposed in that way upon the language of the patent had to be considered. But, in view of the other differences between the Wolvin and Campbell's design, we need not pass upon the one relating to the side walls of the cargo hold. Indeed, careful consideration both of the facts and the law constrains us to hold that the history of this application in the Patent Office requires the invention to be limited to the design described in the patent, and that, yielding to it validity for the purposes of this decision, there is no infringement.

The decree below must be affirmed, with costs.