AMERICAN GRAPHOPHONE CO. v. VICTOR TALKING MACH. CO. et al.

(Circuit Court of Appeals, Second Circuit.  December 12, 1910.)

No. 87.

PATENTS (§ 326*)—VIOLATION OF INJUNCTION AGAINST INFRINGEMENT—LICENSE TO "OPERATE UNDER A PATENT."

Where defendant, which had been enjoined from infringing a patent owned by complainant, covering a sound-producing apparatus for talking machines, including the sound record, under a subsequent contract with complainant was given the right to "operate" under such patent, in return for the granting of a like right under a patent of its own, it had the right to sell records made by another, as well as those of its own make, and was not chargeable with violation of the injunction because it sold records made by another, who had been held as a contributory infringer of complainant's patent; such records, however, not being a direct infringement.

[Ed. Note.—For other cases, see Patents, Dec. Dig. § 326.*

For other definitions, see Words and Phrases, vol. 6, pp. 4989–4992.]

In Error to the Circuit Court of the United States for the Southern District of New York.

Suit in equity by the Victor Talking Machine Company and the United States Gramaphone Company against the American Graphophone Company. From an order (178 Fed. 577) imposing a fine for contempt, defendant appeals. Reversed.

Writ of error to an order of the Circuit Court fining the defendant in the sum of $1,000 payable to the United States for contempt in violating an injunction restraining it from infringing claims 5 and 35 of United States letters patent No. 534,543 to Emil Berliner.

Ralph L. Scott (R. N. Dyer and C. A. L. Massie, of counsel), for plaintiff in error.

Stimson & Williams (Horace Pettit, of counsel), for defendants in error.

Before COXE, WARD, and NOYES, Circuit Judges.

WARD, Circuit Judge. The complainant the Victor Talking Machine Company is licensee under the Berliner patent for a talking machine called the "gramophone." It obtained an injunction in a suit against the defendant, the American Graphophone Company ([C. C.] 140 Fed. 860, affirmed 145 Fed. 350, 76 C. C. A. 180), which the court below has held to have been violated. Claims 5 and 35 of the patent were sustained for the process of reproducing sounds and the apparatus for doing so, being a combination of the Berliner reproducing stylus with sound records which were old.

"5. The method of reproducing sounds from a record of the same which consists in vibrating a stylus and propelling the same along the record by and in accordance with the said record substantially as described."

"35. In a sound reproducing apparatus consisting of a traveling tablet having a sound record formed thereon and a reproducing stylus shaped for engagement with said record and free to be vibrated and propelled by the same, substantially as described."

The Graphophone Company is the owner of United States letters patent to Jones, No. 688,739, for the production of the sound records now in universal use. It obtained an injunction in a suit against the Universal Talking Machine Company, one of the Victor Company's subsidiary companies. 151 Fed. 595, 81 C. C. A. 139.

June 3, 1907, the Victor Company and the Graphophone Company, with a view to composing differences and of conferring mutual licenses, entered into an agreement which recites that the Victor Company has a license "to manufacture, sell, and deal in gramophones and gramophone goods" under the Berliner patent, and the Graphophone Company is desirous of operating under the said patent, also that the Graphophone Company is owner of the Jones patent and the Victor Company is desirous of operating thereunder, and then confers by implication upon each the right to "operate" under the patent of the other with three reservations, viz.: First, that neither party shall counterfeit nor copy any record owned or controlled or first produced by the other nor deal in nor handle such copies if made by others; second, no right is conferred upon the Graphophone Company to use the word "gramophone," nor upon the Victor Company to use the

word "graphophone"; third, the rights conferred are nonassignable. The agreement further provided:

"13. It is further agreed, as to all patents adjudicated or to be adjudicated as valid, that the party owning or controlling such patent or patents will with due diligence actively proceed against all infringers of said patent or patents, to enjoin such infringing parties from said infringements, and for an accounting, when requested in writing to proceed against any such alleged infringers by the other party hereto.

"14. Each of the parties hereto shall, through their counsel, when requested by the other party, assist such other party in prosecuting infringements of said patents, sustained or to be sustained, after the same has been sustained, when so requested in writing, each party bearing the expense of its own counsel; it being understood that the direction and control of said suits shall be entirely in the hands of the party bringing the suit and controlling the patent."

The Graphophone Company obtained an injunction on final hearing against the Leeds & Catlin Company for direct infringement of its Jones patent for sound records. 170 Fed. 327. The Victor Company obtained and maintained a preliminary injunction against the Leeds & Catlin Company as contributory infringers of the Berliner patent, because they sold sound records knowing and intending that they were to be used in and for the reconstruction of the Gramophone Talking Machine. (C. C.) 150 Fed. 147; 154 Fed. 58, 83 C. C. A. 170, 23 L. R. A. (N. S.) 1027; 213 U. S. 326, 29 Sup. Ct. 503, 53 L. Ed. 816.

Before this injunction was finally affirmed, Leeds & Catlin sold a large quantity of these records to various jobbers, which the Graphophone Company took off the hands of the jobbers in exchange for their own records, made under the Jones patent. Some of these records it subsequently sold, and it was for this the Circuit Court held it to be a contributory infringer.

The order is sought to be sustained on the ground that selling these records was a violation of articles 13 and 14 of the agreement of June 3, 1907. Conceding, without admitting, this to be so, the act would not be a contempt, but a breach of contract, to be remedied in an action at law. Washburn & Moen Mfg. Co. v. Southern Wire Co. (C. C.) 37 Fed. 428. Indeed the act of buying the Leeds & Catlin records would seem to be in direct suppression of contributory infringement of the Berliner patent. It remains to inquire whether the Graphophone Company, having bought the records, was within its rights in selling them. The Victor Company contends that the "right to operate under the Berliner patent gives the Graphophone Company only the right to manufacture and sell products manufactured by it." But clause 35 of the patent covers the apparatus, and presumably the Graphophone Company has the right to make and assist others to make the combination of stylus and record which constitutes the apparatus. Why is it confined in so doing to records manufactured by itself? There is no express limitation of the license, other than the three reservations above mentioned. And it is fair to infer, from the reservation that neither party shall deal in nor handle counterfeit records made by others, that they may deal in records made by others which are not counterfeit nor direct infringements. The Leeds & Cat-

lin records are not counterfeits of the Victor record, nor direct infringements of the Berliner patent. Furthermore, we cannot see that the Victor Company's business is any more or any differently injured by the Graphophone Company's selling Leeds & Catlin records than it is by that company's selling its own records. On this point it is suggested that the Leeds & Catlin record is an inferior one. If so, not being sold as the Victor Company's, the business of that company is less likely to be injured by the sale than is the Graphophone Company's business.

The order is reversed, with costs.