FREY et al. v. MARVEL AUTO SUPPLY CO.

(Circuit Court of Appeals, Sixth Circuit. October 3, 1916.)

No. 2805.

1. PATENTS ⊜⇒66—INVENTION—PRIOR ART.
    Prior patents are part of the prior art only by what they disclose on
    their face.
    [Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 79, 81; Dec.
    Dig. ⊜⇒66.]

2. PATENTS ⊜⇒26(2)—INVENTION—COMBINATION OF OLD ELEMENTS.
    Although every element in a patented combination is old, there may
    still be invention, if by the combination a new and useful result is pro-
    duced, or an old result in a new and materially better way.
    [Ed. Note.—For other cases, see Patents, Cent. Dig. § 29; Dec. Dig.
    ⊜⇒26(2).]

3. PATENTS ⊜⇒16—INVENTION—QUESTION OF FACT.
    The question of invention, as distinguished from mechanical skill, is
    one of fact.
    [Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 14, 15; Dec.
    Dig. ⊜⇒16.]

4. PATENTS ⊜⇒328—VALIDITY AND INFRINGEMENT—APPARATUS FOR COMPRESS-
    ING AIR.
    The Frey patent, No. 1,001,132, for an apparatus for compressing air,
    specially designed for inflating automobile tires through power furnished
    by the automobile engine, discloses patentable novelty and invention,
    and is of such merit as to entitle it to a liberal construction. Claim 3
    also *held* infringed.

5. PATENTS ⊜⇒112(1)—CONSTRUCTION—EFFECT OF REJECTION OF CLAIMS.
    Where the Patent Office rejects a claim on its merits, and the rejection
    is acquiesced in, and the patent issues, the patentee cannot afterwards ·be
    permitted a construction of the claims allowed broad enough to embrace
    the claim which was rejected; but, to be estopped, he must be shown
    to have surrendered something which he now claims to obtain that which
    was allowed.
    [Ed. Note.—For other cases, see Patents, Cent. Dig. § 162; Dec. Dig.
    ⊜⇒112(1).]

6. PATENTS ⊜⇒87—CONSTRUCTION—PROCEEDINGS IN PATENT OFFICE.
    The rule that abandonment of an invention is not to be presumed, but
    must be clearly proven, applies to abandonment claimed because of pro-
    ceedings in the Patent Office.
    [Ed. Note.—For other cases, see Patents, Cent. Dig. § 112; Dec. Dig.
    ⊜⇒87.]

Appeal from the District Court of the United States for the North-
ern District of Ohio; John H. Clarke, Judge.

Suit in equity by Herbert H. Frey and the Mayo Manufacturing
Company against the Marvel Auto Supply Company. Decree for de-
fendant, and complainants appeal. Reversed.

Lynn A. Williams and Robert M. See, both of Chicago, Ill., for
appellants.

M. G. Norton, of Cleveland, Ohio, for appellee.

Before KNAPPEN and DENISON, Circuit Judges, and COCH-
RAN, District Judge.

⊜⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

KNAPPEN, Circuit Judge. Suit for infringement of patent No. 1,001,132, August 22, 1911, to plaintiff Frey. Plaintiff Mayo Manufacturing Company is the exclusive licensee under the patent, which is for an improvement for apparatus in compressing air. The invention is specially designed for inflating the tires of an automobile. It consists of an air-pump intended to be substituted for the spark-plug of one of the cylinders of the automobile gas engine. The defenses are non-invention, lack of novelty, and non-infringement. The District Court found the patent valid, but denied infringement, and dismissed the bill. The appeal is from that decree.

The construction and operation of the patented device are shown by reference to the patent drawings here reproduced:

Fig. 1.          Fig. 2.

The pump proper consists of a lower cylinder G, in which is operated a piston D, and an upper cylinder J, in which a piston F operates, the two pistons being connected by a stem E. Air is admitted into the upper cylinder by an inwardly-opening automatic valve M at the upper end of that cylinder. A pipe or conduit B extends from the lower pump-cylinder to the automobile engine-cylinder. When a vacuum exists in the engine-cylinder, the pistons F and D are forced to the lower end of their travel; compression in the motor-cylinder forces

the two pistons to the upper ends of their respective strokes, so compressing the air in the pump-cylinder and forcing it out through the pipe $L$, whence it is conveyed to the tire. The area of the upper pump piston being much less than that of the lower piston, the pressure in the upper pump-cylinder is of course greater than in the engine-cylinder. Openings $N$–$N$ in the upper pump-cylinder admit air to that cylinder at the lower end of the stroke of its piston, and permit the discharge of air from the lower pump-cylinder on the up-stroke of the pistons. There are also air passages $S$–$S$ in the lower pump-cylinder. In the pipe or conduit $B$, leading from the engine-cylinder to the lower pump-cylinder, there is shown in Fig. 1 a non-return valve $a$ (entering the nozzle $b$), which admits air for the purpose of supplementing the pressure of gas from the engine-cylinder, which, when the engine is idling (as is intended in practice), is naturally small. The compression in the engine-cylinder with which the pump is connected may thus be normal, while in the other cylinders it may be materially subnormal.

The device illustrated by Fig. 2 differs from that of Fig 1, so far as here material, in this respect: Instead of the air valve $a$ opening directly into the conduit or pipe $B$, two non-return air valves $a^1$–$a^1$ are shown opening directly into the space in the lower pump-cylinder below the lower limit of the piston's travel. By the device of the patent no change is effected in the engine or its cylinders, except that the spark plug of one cylinder is temporarily removed, and in its place inserted the lower end of the pump. The pump is operated without explosion in the connecting engine-cylinder.

The prior art discloses numerous power pumps, both air and water, with differential pistons and cylinders, and with inlet and outlet valves; but, with four exceptions, none of these devices are intended for or seem adaptable to use for inflating automobile tires through power furnished by the automobile engine. Michelin, No. 795,531 (1905), and Serne, British patent No. 13,571 (1906), show differential cylinders and piston air pumps for inflating tires. Each of these devices, however, is intended to be operated by the explosive pressure of the engine, and neither has the non-return valve $a$ or $a^1$ of Frey or the equivalent thereof. In Michelin, No. 854,371 (1907), two of the motor-cylinders are disconnected from the gas supply and converted into air-pumps, the reciprocating of the pump-piston being effected by the alternate action of the two engine-cylinders. Swain, No. 938,522 (1909), shows a compression tire-inflating cylinder air-pump with differential pistons, operating without explosion. Swain, however, has no means for admitting air directly to the communication between the engine-cylinder and the lower pump-cylinder (or the piston of that cylinder when at the lowest limit of its travel). It seems impossible that his open ports, not valves, in the upper part of his lower pump-cylinder, can admit any appreciable quantity of air into that communicating space.

[1] Prior patents are part of the prior art only by what they disclose on their face. Naylor v. Alsop Process Co. (C. C. A. 8) 168 Fed. 911, 920, 94 C. C. A. 315; Munising Paper Co. v. American, etc., Co. (C. C. A. 6) 228 Fed. 700, 703, 143 C. C. A. 222. We are satisfied that

Swain's air inlets do not have the effect of Frey's non-return valve referred to.

[2, 3] The claims in suit are Nos. 2 and 3, which we print in the margin.[1] We have no difficulty in finding the claims in suit valid as against the defenses of lack of novelty and lack of invention. Notwithstanding every element in plaintiff's device were old, invention would still exist if by the combination of those old elements there is produced a new and useful result, or if an old result is effected in a new and materially better way. Loom Co. v. Higgins, 105 U. S. 580, 591, 26 L. Ed. 1177; Expanded Metal Co. v. Bradford, 214 U. S. 366, 381, 29 Sup. Ct. 652, 53 L. Ed. 1034; Ferro Concrete Constr. Co. v. Concrete Steel Co. (C. C. A. 6) 206 Fed. 666, 669, 124 C. C. A. 446; Proudfit Co. v. Kalamazoo Co. (C. C. A. 6) 230 Fed. 121, 127, 144 C. C. A. 418. The question of invention, as distinguished from mechanical skill, is one of fact. Herman v. Youngstown Co. (C. C. A. 6) 191 Fed. 579, 582, 112 C. C. A. 185; Ferro Co. v. Concrete Steel Co., supra; Proudfit Co. v. Kalamazoo Co., supra. The record shows that, prior to Frey's invention, many persons were unsuccessfully attempting to solve the problem which Frey solved. We agree entirely with the conclusion of the District Court that "Frey was the first to devise a commercially practical and feasible device to accomplish what must be recognized as an important result." The device of the patent has met with pronounced commercial success and public favor.

[4] The important question relates to infringement. The alleged infringing device is the equivalent of the device of the patent unless in this respect and to this extent: The non-return air valve, which is an element of both claims 2 and 3 of the patent, does not, in defendant's structure, open directly into the conduit or pipe $B$ which leads from the engine-cylinder to the lower pump-cylinder, as shown in Fig. 1 of the patent drawings; instead, it has two non-return valve openings in the lower wall forming part of the enclosure of the lower pump-cylinder, substantially corresponding to the valves $a^1$–$a^1$ of Fig. 2 of the patent drawings. The non-return valves of defendant's structure perform the same functions as the non-return valve of Fig. 1 of the patent, and accomplish the same result. In the commercial structure of the predecessor of plaintiff Mayo Manufacturing Company, the non-return valves were in the same location as those of defendant. The District Court was of opinion that but for the office history of the patent application, as disclosed by the file wrapper and contents, the defendant's

[1] "2. The combination of a cylinder $G$, a passage forming a communication between said cylinder and a cylinder $A$, in which compression is to take place, a piston in the cylinder $G$, a second cylinder $J$ of less diameter than the cylinder $G$, a piston in the cylinder $J$, and means for connecting said pistons, a passage communicating with the outer air located between the cylinder $G$ and the compression apparatus, and a non-return valve opening inward in said passage."

"3. The combination of a cylinder $G$, a passage forming a communication between said cylinder and a cylinder $A$ in which compression is to take place, a piston in the cylinder $G$, a second cylinder $J$ of less diameter than the cylinder $G$, a piston in the cylinder $J$, and means for connecting said pistons, inlet and outlet passages to said cylinders and a non-return valve opening inward into the communication to the compression means."

structure would be deemed the equivalent of the structure of the patent in the respect mentioned, and so would infringe. With this conclusion we entirely agree, at least as to claim 3.

The non-return valve of claim 3 is substantially described as opening into the "passage forming a communication" between the engine-cylinder and the lower pump-cylinder (that of claim 2 as opening into a "passage communicating with the outer air located between" those cylinders, and, as described in the specification, connecting with the pipe *B*). The term "passage forming a communication" does not necessarily mean a mere pipe or conduit. One definition of "passage" given by the Century Dictionary is "*a means of* entrance, exit or *transit*"; and one of the definitions of "passageway" is "a road, avenue, path or *way* affording *means of communication.*" The conspicuous feature of plaintiff's device is the introduction of air between the engine-cylinder and the piston of the lower pump-cylinder when at the lowest limit of its travel. For the purposes of such operation it is immaterial whether the air is introduced *directly* into the pipe or conduit *B*, or *indirectly* thereto, as in Fig. 2 and in defendant's structure. In either case it is, through the compression in the engine-cylinder, applied directly to the piston of the lower pump-cylinder. In the absence of limitations other than appear on the face of the patent, the space remaining in the cylinder, as mechanically constructed, below the pump-piston, and communicating directly with the conduit, is in substance a part of the communication between the engine-cylinder and the piston of the pump-cylinder, and thus the equivalent of the "passage forming a communication between" the two cylinders referred to. We think the merit of the invention, and the length of the step taken by the inventor, entitle the patent to such liberality of construction.

The controlling question is whether plaintiffs are estopped by what occurred in the Patent Office to claim such equivalency. The Patent Office history, so far as here material, is this: The application as presented contained ten claims. Claims 1, 2, 3, 4, 5, and 7 were held by the examiner to be anticipated by Swain, and were all canceled. That action has no apparent bearing upon the issue here. Claims 9 and 10 were rejected as "anticipated by Swain, in view of Michelin" (1907 patent), certain lines of the specification of that patent being referred to. Both these claims were canceled. Original claims 6 and 8 read as follows:

"6. The combination of a cylinder *G*, means for placing said cylinder in communication with a cylinder in which compression is to take place, a piston in the cylinder *G*, a second cylinder *J* of less diameter than the cylinder *G*, a piston in the cylinder *J*, and means for connecting said pistons, a passage communicating with the outer air located between the cylinder *G* and the compression apparatus, and a non-return valve opening inward in said passage."

"8. The combination of a cylinder *G*, means for placing said cylinder in communication with a cylinder in which compression is to take place, a piston in the cylinder *G*, a second cylinder *J* of less diameter than the cylinder *G*, a piston in the cylinder *J*, and means for connecting said pistons, inlet and outlet passages to said cylinders and a non-return valve opening inward into the communication to the compression means."

Claim 6 was criticized as "indefinite and confused in phraseology. It is not clear what is covered by 'means for placing said cylinder in communication with a cylinder,' and the cylinder mentioned appears to be directly connected with the pump-cylinder also enumerated in said claim." No mention was made of claim 8. Neither claim 6 nor claim 8 were ever rejected; they were voluntarily amended by the applicant, and were allowed as claims 2 and 3 of the patent, being the claims here sued upon—claim 1 (not in suit) being new. Claim 9 so rejected by the examiner, is printed in the margin.[2] It contained, as a part of the applicant's description, these words: "the cylinder, G, being provided with means to admit atmospheric air to the communication with the gas-engine cylinder." The learned judge who heard the case in the District Court was of opinion that the clause just quoted was referable only to the valves, $a^1$-$a^1$, of Fig. 2 of the patent drawings, which construction is described in the specification as "perforated," with a flap valve covering the perforations, and as "adapted to take the place of the nozzle and valve B and A, of Fig. 1," and that as claim 2 expressly, and claim 3, by natural implication, provide for an opening of the non-return valve into the passage between the engine-cylinder and the pump-cylinder, it results from the rejection and cancellation of claim 9, and the allowance of claims 2 and 3, that the latter claims were in effect limited to the construction shown in Fig. 1, that is to say, having the air-valves located in the pipe or conduit, B, and expressing regret at the necessity of so deciding (doubtless in view of the meritorious nature of plaintiff's invention) held defendant's device not to infringe. The case turns upon the correctness of this conclusion as to the effect of the Patent Office history.

[5] It is the broad, general rule that where the Patent Office rejects a claim covering a device on its merits, and the rejection is acquiesced in and the patent issues, the applicant cannot afterwards be permitted a construction of the claims allowed wide enough to embrace the claim which was rejected. Morgan Envelope Co. v. Albany Paper Co., 152 U. S. 425, 429, 14 Sup. Ct. 627, 38 L. Ed. 500; Royer v. Coupe, 146 U. S. 524, 532, 13 Sup. Ct. 166, 36 L. Ed. 1073; Thomas v. Spring Co. (C. C. A. 6) 77 Fed. 420, 430, 23 C. C. A. 211. Thus, where the applicant, in order to get his patent allowed, is compelled to accept a claim narrower than contained in his original application, such claim cannot be construed to cover what was rejected by the Patent Office. Hubbell v. United States, 179 U. S. 77, 80, 21 Sup. Ct. 24, 45 L. Ed. 95; Campbell v. Amer. Shipbuilding Co. (C. C. A. 6) 179 Fed. 498, 502, 103 C. C. A. 122, and cases there cited. But to be estopped by the action of the Patent Office, a patentee must be shown to have surrendered something which he now claims in order to obtain that which

[2] "9. The combination with a gas engine cylinder, of a cylinder G communicating therewith, a pump cylinder communicating with the cylinder G, a piston adapted to reciprocate in cylinder G, a piston adapted to reciprocate in the cylinder J, means connecting said pistons, the cylinder G being provided with means to admit atmospheric air to the communication with the gas engine cylinder."

was allowed. Bundy Mfg. Co. v. Detroit Time Register Co. (C. C. A. 6) 94 Fed. 524, 542, 36 C. C. A. 375.

The pivotal question is: Why was claim 9 rejected and the amendment of claim 6 required? Was it because of a requirement that the non-return valve be limited in location to the conduit or pipe *B*, or was it because claim 9 was broader than the state of the art permitted, in that no specific means for admitting the air to the communication with the engine-cylinder were stated, and because claim 6 was indefinite in the respects later referred to? Claim 9 called for providing the cylinder *G* "with means for admitting atmospheric air to the communication with the gas-engine cylinder." It did not mention the means of such admission. Under a fairly liberal range of equivalents it would, standing alone, be broad enough, in our opinion, to cover a non-return air-valve anywhere in the communication between the pump-cylinder and the engine-cylinder.

As already said, the claim was rejected on reference to "Swain in view of Michelin" (1907), with reference to certain lines of Michelin's specification. The ground of the reference was not otherwise stated. The rule on which estoppel is based required the examiner to point out the meaning of his objection. Failing to do this, we can only look to the matter referred to to determine the meaning. Vrooman v. Penhollow (C. C. A. 6) 179 Fed. 296, 102 C. C. A. 484. Swain shows airports opening directly into the lower pump-cylinder, but above the piston when at the lowest limit of its travel. No air *valves* of any kind are shown. As we have already said, it seems impossible that air so admitted could, at least in appreciable amount, reach the communication between the engine-cylinder and the pump-cylinder. The lines of Michelin's specification referred to by the examiner related to the two-way cocks in the motor-cylinders, turned so as to cut off the supply of gas and permit the admission of air thereto. Claim 6, before its amendment, called for (as its last two elements) "a passage communicating with the outer air located between the cylinder *G* and the compression apparatus, and a non-return valve opening inward in said passage," and claim 8 for "inlet and outlet passages to said cylinders and a non-return valve opening inward into the communication to the compression means"; and this language was not amended or criticized.

The amendments made to claims 6 and 8 substitute for the second element (viz. "means for placing the" cylinder *G* "in communication with" the compression-cylinder) the words "a passage forming a communication between said cylinder [*G*] and the cylinder [*A*]" in which compression is to take place. It is noticeable that neither of the claims, originally or as amended, in express terms calls for the location of the non-return valve in a "pipe" or "conduit," and the Patent Office never in terms criticized either of the three claims in question for not so limiting the location of the valve. It thus does not, we think, definitely and clearly appear that claim 9 was rejected, and claims 6 and 8 so amended, because of a requirement of the Patent Office that the location of the non-return air-valve be limited to the pipe or conduit. It is, we think, not impossible or even highly improbable that claim 9 was rejected because broad enough to cover the construction disclosed by the Swain and Michelin patents taken together, that is to say, as

disclosing air-ports or cocks generally permitting the introduction of air into the compression cylinder, and that the criticism of claim 6 as "indefinite and confused in phraseology" was intended to be limited by the reason expressed therefor, viz.:

"It is not clear what is covered by 'means for placing said cylinder in communication with a cylinder,' and the cylinder mentioned appears to be identical with the pump-cylinder also enumerated in said claim."

As lending force to such construction, it is to be noted that claim 1, which was included with claim 6 in the criticism stated, had the same second element as claim 6, while it contained no air-valve element whatever; also that, with the exception of the rejected claim 9, none of the claims, presented or allowed, use language broad enough to cover the valve $M$, or the air-ports $N$ or $S$—claim 10 (rejected in connection with claim 9) containing the element "apertures through the walls of the pump-cylinder $J$ and the cylinder $G$." It is also to be noted that claims 6 and 8 are the only claims calling for non-return air-valves in the communication between the engine-cylinder and the pump-cylinder, or in any other place. It is also, we think, significant that neither claim 6 nor claim 8 were ever canceled or rejected, or claim 8 (now claim 3) even criticized, by the Patent Office. We think also some weight is due the consideration that Fig. 2 was not stricken out, nor the express reference in the specification to that figure and to the location of the valves in the lower wall of the pump-cylinder. True, Fig. 2 directly illustrates the construction last referred to, and we appreciate the force of the consideration that the clause in claim 9 to which we have referred, read literally, is illustrated by Fig. 2, and not by Fig. 1. But giving to claim 3 at least the liberal interpretation which its language allows (in view of the history of the art), and the range of equivalents permitted, claim 3, in the absence of the claimed estoppel, would plainly read upon both Fig. 1 and Fig. 2.

[6] We think the rule that abandonment of an invention is not to be presumed, but must be clearly proven, applies to abandonment based upon proceedings in the Patent Office, such as here relied upon. Sly Mfg. Co. v. Russell (C. C. A. 6) 189 Fed. 61, 110 C. C. A. 625. And in view of the considerations to which we have called attention, and under the applicable rules of law referred to, we are constrained to the opinion that the patentee is not affirmatively shown to be estopped by what occurred in the patent office from construing at least claim 3 as covering the construction shown in Fig. 2 of the patent, and thus the alleged infringing device of defendant. By the "passage communicating with the outer air" of claim 2 into which the non-return valve opens is apparently meant the nozzle $b$ of Fig. 1; and, if so, it may be that defendant's structure should not be held to infringe that claim. But as the final result of this appeal is the same, whether or not claim 2 is held infringed, we find it unnecessary to determine that question.

The decree of the District Court is accordingly reversed, with costs, and the record remanded to that court, with directions to enter decree in accordance with this opinion, finding claims 2 and 3 valid, and claim 3 infringed, and for further proceedings not inconsistent with this opinion.