### TROY WAGON WORKS CO. v. OHIO TRAILER CO.

(Circuit Court of Appeals, Sixth Circuit. May 6, 1921.)

No. 3482.

1. **Patents ☞167(1)—Claims must be read with specifications to determine scope.**

   Notwithstanding the presumption that broader claims were intended to cover equivalent forms of construction, where other and narrower claims fully covered the construction described in the specifications, the broad claims must be read with the description of the invention, in order to determine the scope and effect that should be given to them.

2. **Patents ☞245—Old element cannot be considered equivalent of new element, on which claim of novelty is based.**

   Where the patentees claimed that the novelty of their invention was based on an entirely new form of loose connection between the draft bar of a truck trailer and the wheels, they cannot, in an infringement suit, assert that a loose connection, which was old in the automobile art, is an equivalent of their new connection.

3. **Patents ☞328—1,117,944, claims 1, 2, and 11, for trailer trucks, held not infringed.**

   The Eccard & Smith patent, No. 1,117,944, claims 1, 2, and 11 for a trailer truck, the novel element in which was a loose connection specifically described in the specifications, *held* not infringed by a trailer in which the loose connection was the drag link and ball joint sockets, which were old in the art.

4. **Patents ☞245—Substitution of old element in combination held substantial, not colorable, change.**

   The substitution for the particular form of loose connection described in a patent for trailer trucks, which kept the wheels always in alignment, of the drag link and ball joint socket connection, which was old in the art, and which permitted independent motion of the wheels, which resulted in objectionable side sway of the vehicle, *held* a substantial change in the combination, and not a mere colorable substitution of an equivalent.

5. **Patents ☞311—Unfair competition, pleaded as aggravation of infringement, not considered, in absence of infringement.**

   Allegations of unfair competition, which were pleaded, not as an independent ground for relief, but as matters of aggravation in a suit for infringement of a patent, need not be considered, where the proof showed that defendant did not infringe plaintiff's patent.

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Ohio; D. C. Westenhaver, Judge.

Suit for infringement of a patent by the Troy Wagon Works Company against the Ohio Trailer Company. Decree for defendant, and plaintiff appeals. Affirmed.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

H. A. Toulmin, Jr., and H. A. Toulmin, Sr., both of Dayton, Ohio, for appellant.

Lincoln B. Smith, of Chicago, Ill. (G. E. Dunstan, of Cleveland, Ohio, and Miller, Chindahl & Parker and C. Paul Parker, all of Chicago, Ill., on the brief), for appellee.

Before KNAPPEN, DENISON, and DONAHUE, Circuit Judges.

DONAHUE, Circuit Judge. The plaintiff-appellant filed its bill of complaint in the District Court of the United States, Northern District of Ohio, Eastern Division, charging infringement by defendant of claims 1, 2, and 11 of the United States letters patent No. 1,117,944, issued in 1914 to John F. Eccard and Jacob Smith, and by them assigned to appellant. The bill of complaint also charges, as an aggravation of the infringement of this patent, certain specific acts of the defendant in the nature of unfair competition.

The Eccard & Smith patent "relates to improvements in reversible trucks, some of the features being more particularly applicable to trucks or wagons designed to be drawn by motor vehicles and also particularly applicable to trucks wherein springs are employed between the bed and the axle." Claims 1, 2, and 11 of this patent read as follows:

"1. In a vehicle of the character described, a frame, an axle located below said frame, said frame being supported upon said axle so as to be capable of a movement relative thereto, carrying wheels swively connected with said axle, a draft bar pivotally connected with said frame, a transverse steering member connected with said wheels, and a loose connection between said draft bar and said transverse member to permit said bar and member to have relative movement with respect to each other."

"2. In a vehicle of the character described, an axle, wheels swively connected with said axle, springs on said axle, a frame supported on said springs, a transverse member connected with said wheels, a draft bar pivotally connected with said frame and supported thereby, and a loose connection between said bar and member such that said bar may move said member in a transverse direction to steer said wheels but permitting vertical and torsional movements of said bar and member with respect to each other."

"11. In a vehicle of the character described, swiveled wheels, a bed frame supported by said wheels, a draft bar pivotally mounted at its rear and slidingly supported by said bed frame at its front end, a transverse member connected with said wheels, and a loose connection between the draft bar and the transverse member for moving said member transversely to steer said wheels but permitting vertical, longitudinal and torsional movement of said bar and transverse member for the purpose specified."

The trial court held that the defendant's construction did not infringe either of these claims, and therefore did not pass upon their validity.

While the construction of the truck is described somewhat in detail this is no doubt for the purpose of showing the organization of the claimed invention in the completed structure, for it further appears that the truck described, as stated in the specifications, is the ordinary and usual type of motor-drawn trailer truck. On page 2, lines 5–10, of the description and specifications filed with the application for this patent, the following appears:

"In motor-drawn trucks or vehicles and machines generally of this character it has been found desirable to mount the bed of the truck upon springs.

to compensate for the jar and shocks of the increased speed of travel, and it has also been common to make the trucks and wagons of this type reversible in the sense that the vehicle may be drawn from either end. It has been usual to provide a draft bar, which preferably must be capable of a swinging lateral movement in order to guide the wheels when the vehicle is being drawn from that end."

It is the claim of the appellant that this patent is pioneer in character, generic in respect to its claims, and as such is entitled under the law to a broad and liberal interpretation and construction. It is the claim of the appellee that there is no novel feature to be found in the construction of this truck; that the various devices were all in common use, in similar combinations and for the same purpose, long prior to the filing of the application for this patent; that nothing beyond mechanical skill was required to produce the trailer of the patent in suit; that for these reasons claims 1, 2, and 11 are invalid for lack of novelty and lack of invention; that, if valid, they must be limited to the specific construction described in the patent; and that, if so limited, defendant's construction does not infringe.

In the specifications of this patent, page 1, line 33, it is said:

"One of the main objects of this invention is to so arrange the various parts as to allow for a vertical movement, a swinging movement, a longitudinal movement, and a torsional movement of the draft bar with respect to its connection with the wheels."

This result is accomplished by what the inventors call a "loose connection." This loose connection, as illustrated and described in the patent in suit, is a sliding connection, consisting of a steering member bifurcated at its central portion, and within this bifurcated portion a swivelly connected rectangular open frame, through which frame the draft bar projects. The sides of the bar where it passes through this frame are provided with hardened rounded plates, fitted snugly between the hardened plates on the inside of the frame, so that when the draft bar is being used for steering purposes and as that bar swings from side to side, it will move the frame swiveling in the bifurcated portion of the steering member, and, as that member moves up and down in a vertical direction, the rounded shoes or plates on that portion of the draft bar in contact therewith will slide upon the hardened plates of the frame, thereby providing a swinging movement, a vertical movement, a longitudinal movement, and a torsional movement without affecting the steering mechanism or the position of the wheels.

[1] It is true that the other and narrower claims of the patent fully describe and cover the loose connection introduced in the first 125 trucks constructed under this patent by the plaintiff-appellant, and therefore the presumption obtains that these broader claims were intended to and do cover equivalents of other forms of construction that function in the same manner and produce like results, or that present merely a different arrangement of parts.

However, these claims must be read in connection with the description of the invention filed with the application for the patent, in order to determine the scope and effect that should be given to them. It is insisted by counsel for appellant that combination claims, stated in

broad language, cannot be narrowed and in practical effect defeated by comparison with prior art, which does not at all show the general combination, and which also entirely fails to disclose the most important and controlling novel element, citing in support of this proposition Seymour v. Osborne, 11 Wall. 516, 541, 20 L. Ed. 33, in which it was held that both a new ingredient and a combination of old ingredients embodied in the same machine may be invention, and Cantrell v. Wallick, 117 U. S. 689, 694, 6 Sup. Ct. 970, 973 (29 L. Ed. 1017), in which the following appears:

"The first defense is based on the theory that a patent cannot be valid, unless it is new in all its elements as well as in the combination, if it is for a combination. But this theory cannot be maintained. If it were sound, no patent for an improvement on a known contrivance or process could be valid."

The inventors, Eccard & Smith, in the description accompanying the application for a patent, commencing with line 5 on page 2, make this declaration:

"This draft bar is common in vehicles of this character, but the manner of connecting the same with the steering member 5 and with the main frame and draft appliances, as the case may be, are the novel features of these improvements and will now be described."

Following this is the description of the loose connection hereinbefore given.

[2] If it were conceded that this combination of old elements with a new and novel element, to wit, the loose connection described in the specifications and drawings of this patent, is invention, it by no means follows that these broad claims of this patent may be extended to include an element or elements old in the art, in the place of that which the inventors claimed to be the new and novel element of their structure.

That the drag link and ball joint sockets are old in the automobile patent art seems to be fully established by the oral evidence and by Haas 801,521, Ball 723,975, Maxim 845,106, and Rae 810,673. While it is true that a combination of old elements that will produce a new and useful result, or an old result in a new and materially better way, may be invention (Frey et al. v. Marvel Co., 236 Fed. 916, 150 C. C. A. 178 [C. C. A. 6]), yet these inventors did not ask, nor did they obtain, a patent covering such a combination of old elements. On the contrary, they insisted that this form of loose connection described in their application for this patent was a new and novel feature of their invention, and they cannot now be heard to say that it was not in truth and in fact new or novel, but merely the equivalent of the ball and socket joint form of loose connection, then old and well known in the automobile art.

If the inventors were seeking a patent covering only a combination of old elements, they should have presented such a claim to the Commissioner of Patents and obtained his judgment as to the patentability of the combination. If this court were now to hold that this loose connection described in the application for the patent in suit was not new

and novel, but in fact was and is the equivalent of the old ball and socket form of loose connection, it would, for the reasons above stated, be compelled to declare the patent invalid. This patent cannot be sustained on any theory other than that these broad claims are necessarily directed and confined to the form or a similar form of loose connection which the inventors themselves declared to be new and novel, as distinguished from old and well-known forms producing a like result.

This question is fully discussed in Houser v. Starr, 203 Fed. 264, 269, 121 C. C. A. 462, 467 (C. C. A. 6). In the opinion in that case (Denison, J.) it is said:

"But whether or not such extreme liberality of construction could be permited in the supposed case, it cannot be allowed where the patentee has deliberately confined himself, by his claim, to a structure containing the peculiar element which was the main feature of his invention, and where the alleged infringing structure contains not that peculiar element, but the old substitute therefor which the inventor had discarded"—citing in support of this proposition White v. Dunbar, 119 U. S. 47, 51, 7 Sup. Ct. 72, 30 L. Ed. 303; Cimiotte v. American Co., 198 U. S. 399, 25 Sup. Ct. 697, 49 L. Ed. 1100; Coupe v. Royer, 155 U. S. 565, 576, 15 Sup. Ct. 199, 39 L. Ed. 263; Brown v. Stilwell, 57 Fed. 731, 739, 741, 6 C. C. A. 528 (C. C. A. 6).

[3] After the plaintiff-appellant had manufactured and sold 125 trucks constructed in the exact form described by the specifications and shown by the drawings of the patent in suit, it abandoned that form and began manufacturing and selling trailer trucks of the "double drag link type." These drag links are connected at one end to the steering arm and at the other end to the rear part or heel of the draft bar. Intervening between these connections is a ball and socket joint, instead of the loose connection described in the patent. It is now claimed that this form is but a refinement of the original invention, and wholly within the broad terms of claims 1, 2, and 11 of the patent. The defendant's construction is also of this double drag link type, which type further differs from the plaintiff's original construction, in that it has neither a rigid transverse, bifurcated steering member or metal frame swivelly connected therein. It is the claim of the defendant-appellee that—

"this double drag link construction is an entirely distinct type of steering gear from the type described in the plaintiff's patent; that each type has its advantages and disadvantages; that both are standard in common automobile construction, as well as in motor trucks and trailers; but that they are quite distinct, and rest on different steering principles."

It appears from the evidence that in trailer trucks manufactured in conformity with the plaintiff's patent, with a single rigid transverse member, and the loose connection described and shown in the drawings, that relative vertical longitudinal and torsional movement of the frame or the draft bar is permitted without affecting the steering mechanism or the position of the wheels; that the steering wheels have no independent motion whatever, but, whenever movement is imparted to them by the rigid transverse member, these wheels move in the same direction at the same time. In the doube drag link type, every vertical longitudinal or torsional movement of the draft bar transmits some part of that movement to the steering wheels, and this movement, by

reason of the fact that each steering wheel is, to some extent wholly independent of the movement of the other, permits them to turn slightly in opposite directions, thereby causing a slight weave or "side sway" motion. Mr. Hudson, in testifying in reference to this, said: "With our present type of construction, we have had complaints from customers from side swaying." Later in the record, he stated that he had testified in a Patent Office interference, a few months before the trial of this case, with reference to this same commercial trailer of the plaintiff that—

"Side sway in a trailer is a very objectionable feature. It is our desire to so change the design of our trailers, that this objection may be removed at the earliest possible moment."

In the first 125 trucks manufactured by the plaintiff in accordance with the description and drawings of the patent in suit, the rigid transverse connection by which both wheels were controlled in unison with each other did not permit of this weaving or "side sway" movement incident to the double drag link type. In this respect the result obtained in one form of truck differed from the result obtained in the other.

There are, however, in practical operation, also some objections to the rigid connection, and the fact that the plaintiff-appellant discontinued the manufacture of trucks having this rigid transverse connection and adopted the double drag link type, would indicate that the objections to this latter type of trailer truck, are less serious than the objections to the former. However that may be, the evidence indicates that this difference in operation is substantial and not merely fanciful, and that the problem of obviating the objections to either type is, so far as appears by this record, still unsolved, although there is some evidence to the effect that that has been attempted and perhaps accomplished by a later invention now owned by plaintiff-appellant.

[4] It is insisted, upon the part of the plaintiff-appellant, that the separation of one integral part into two, the two parts doing precisely or substantially what was done by the single element, is but a mere colorable change that will not evade a charge of infringement. That proposition, in the abstract, is undoubtedly true, but the change from a single rigid transverse connection of the steering arm of the wheels with each other and the draft bar, to a separate and independent connection between the steering arm of each wheel and the draft bar in which connection is interposed the ball and socket joint, is not a mere colorable change, but, on the contrary, a substantial change that produces a substantially different result from the single rigid connection of the steering wheels, the effect of which is to overcome the objection to the rigid connection, although presenting difficulties in other respects.

Even if this substantial difference in the results obtained in actual operation of these different types of trailer trucks were to be wholly disregarded, the use of the ball and socket joint, old in the art, cannot, for the reasons heretofore stated, be held to be the equivalent of the "loose connection" described in Eccard & Smith, and shown by the drawings accompanying the application for that patent and which the

inventors insisted were the new and novel features of their construction that entitled them to patent monopoly.

[5] In view of the conclusion reached, that claims 2, 7, and 11 of the patent in suit, cannot be given the broad construction contended for by the plaintiff-appellant, and that therefore defendant's structure is not an infringement thereof, it is wholly unnecessary to determine the validity of these claims. It is equally unnecessary to discuss the averments in plaintiff's complaint in reference to unfair competition in aggravation of infringement. This complaint does not seek independent relief on account of such unfair competition, separate and apart from the claimed infringement, but rather as an incident to such infringement and as an aggravation thereof.

The judgment of the District Court is affirmed.