### TROY WAGON WORKS CO. v. OHIO TRAILER CO.

(Circuit Court of Appeals, Sixth Circuit. July 27, 1921.)

No. 3530.

1. Patents ⬉⟹37—Device held not an invention.

A device to steer an automobile trailer by means of a draft bar attached to a truck pulling a trailer *held* too closely allied in art to the steering gear of an automobile to be patentable.

2. Patents ⬉⟹38—Extension rearward and downward of draft bar held not new and novel in art.

Extension rearward and downward of a draft bar, used in the steering apparatus of a trailer pulled behind a truck or automobile, is not new or novel in the art, so as to be patentable.

3. Witnesses ⬉⟹99—Official of corporation which is a party to the suit is competent witness.

That a witness is secretary and treasurer of corporation which is a party to the suit does not disqualify him as a witness.

4. Appeal and error ⬉⟹690(5)—Objection to testimony of witness, because testimony in another suit was different, disregarded, where record does not show cross-examination.

If testimony of a witness in another suit was different from his testimony in the present suit, such inconsistency should be brought into the record by cross-examination, and in the absence thereof the objection will be disregarded on appeal.

5. Patents ⬉⟹18—Improvement in machinery, obvious to one skilled in mechanical work, is not patentable.

Where an improvement in machinery was made by one skilled in mechanical work, and was obvious to any person so skilled, the improvement is not patentable.

6. Patents ⬉⟹40—Device held not patentable.

Reversible trucks or dump wagons, with a pivoted draft bar at each end, which is connected to the wheels for steering purposes, and which may be locked to the wagon bed or frame in a central position when the truck is being drawn from the opposite end, are not patentable merely because of an automatic locking device to keep the apparatus out of operation at certain times.

7. Patents ⬉⟹26(1)—Automatic locking steering device held not to be an invention.

Where similar steering devices had been invented prior to the addition of an automatic lock, the addition of the lock does not constitute an invention; the mere adaptation of an old element to a specific use not

---

⬉⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

being an invention, unless the combination produces a new result or an old result in a new and materially better way.

**8. Patents ⚙️26(1)—Device held not to be an invention.**

The combination of an automatic lock, which is in itself new and novel, with other locking devices, to keep the locking gear out of operation, does not amount to an invention sufficient for patent, covering the combination with any and all forms of automatic locks, although the new device in itself may be patentable.

**9. Patents ⚙️328—No. 1,214,037, for improvement in steering mechanism adapted to trailer trucks, held void for lack of invention.**

The Hudson patent, No. 1,214,037, claims 1, 2, 3, and 4, for steering device for trailers, *held* invalid for lack of invention.

**10. Patents ⚙️328—No. 1,117,816, claims 6, 7, and 8, held invalid.**

The Eccard & Smith patent, No. 1,117,816, claims 6, 7 and 8, for an improvement in reversible trucks or dump wagons, *held* invalid.

**11. Patents ⚙️328—No. 1,117,816, claim 9, held valid, but not infringed.**

The Eccard & Smith patent, No. 1,117,816, claim 9, for an improvement in reversible trucks or dump wagons, *held* valid, but not infringed.

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Ohio; D. C. Westenhaver, Judge.

Suit by the Troy Wagon Works Company against the Ohio Trailer Company. From decree for defendant, plaintiff appeals. Affirmed.

H. A. Toulmin, of Dayton, Ohio (H. A. Toulmin, Jr., of Dayton, Ohio, on the brief), for appellant.

Lincoln B. Smith, of Chicago, Ill. (G. E. Dunstan, of Cleveland, Ohio, and Miller, Chindahl & Parker and C. Paul Parker, all of Chicago, Ill., on the brief), for appellee.

Before KNAPPEN, DENISON, and DONAHUE, Circuit Judges.

DONAHUE, Circuit Judge. This is an appeal from a decree of the United States District Court, Northern District of Ohio, Eastern Division, finding and adjudging patent No. 1,214,037, issued to W. R. Hudson, January 30, 1917, and now owned by appellant, null and void for want of invention; that claims 6, 7, and 8 of letters patent No. 1,-117,816, issued to John F. Eccard and Jacob Smith, November 17, 1914, are invalid; and that claim 9 of this patent is valid, but not infringed.

The Hudson patent, No. 1,214,037, relates to improvements in the steering mechanism particularly adapted for trailer trucks, and this suit involves all the claims of that patent, which claims are printed in the margin.[1]

[1] 1. In a vehicle of the character described, a main frame, an axle located below said frame, carrying wheels swivelly connected with said axle, springs for supporting said frame from said axle and wheels, a draft bar pivotally connected with said frame, and steering connections from said draft bar to said wheels, said steering connections having ball and socket joints.

2. In a vehicle of the character described, a main frame, an axle and carrying wheels, springs for supporting said frame from said axle and wheels, a draft bar pivotally connected to said frame, steering rods connecting the inner end of said draft bar with said wheels, said connections consisting of ball and socket joints.

3. In a vehicle of the character described, a main frame, an axle and carrying wheels, springs for supporting said frame from said axle and wheels,

It is unnecessary in this case to repeat what was said in the opinion in the recent case of Troy Wagon Works Co. v. Ohio Trailer Co. (No. 3482) 272 Fed. 850, in reference to the old and well-known elements entering into the steering mechanism of appellant's present construction. It is sufficient to say that for the reasons stated and citations given in that opinion, claims 1, 2, 3, and 4 of the Hudson patent in suit cover nothing that is new or novel in the art, nor do they cover a combination of old elements that produce a new result or an old result in a new and materially better way.

[1] Counsel for appellant insists, however, that the prior patent art, cited by appellee, relates solely to automobile construction, and has no relation or application whatever to trailer trucks, for the reason that the steering mechanism of an automobile is controlled by the steering wheel operated by the driver of an automobile, while the steering of the trailer truck is wholly mechanical. It is clearly evident, however, that automobile construction, if not in the same art, is at least in a closely allied art. The steering mechanism of the automobile is readily adaptable to a trailer truck, the only difference being that in the automobile the force necessary to operate the mechanism is applied by the driver through the steering column, and in the trailer truck this force is applied through the draft bar from the automobile or automobile truck to which this draft bar is attached, the direction and course of which is controlled by a driver through and by the same steering mechanism operated by a steering column, instead of a draft bar.

Undoubtedly the substitution of a draft bar that will approximate as nearly as possible the same constant, immediate and efficient control of the steering mechanism of a trailer truck as a steering wheel of an automobile operated by a skillful and intelligent driver, involves prob-

a draft bar pivotally connected to said frame, an arm extending from each of said wheels, and a rod connecting each of said arms with the inner end of said draft bar, the connections between each of said rods with said bar and arm consisting of a ball and socket joint.

4. In a vehicle of the character described, a main frame, an axle and carrying wheels, springs for supporting said frame from said axle and wheels, a draft bar pivotally connected with said frame, arms extending from each of said wheels, steering rods, socket members on the respective ends of each of said rods, balls on said arms and draft bar extending into said socket members, and means for adjusting said socket members.

5. In a vehicle of the character described, a main frame, an axle located below said frame, carrying wheels swivelly connected with said axle, springs for supporting said frame from said axle and wheels, a draft bar pivotally connected with said frame having a rearwardly extending portion, and steering rods connecting the rear end of said draft bar with said wheels, said connection comprising ball and socket joints.

6. In a vehicle of the character described, a main frame, an axle located below said frame, carrying wheels swivelly connected with said axle, arms connected to said carrying wheels, springs for supporting said frame from said axle and wheels, a draft bar pivotally connected with said frame, said draft bar projecting rearwardly and downwardly so that its rear end will lie in substantially the same horizontal plane as the free ends of said arms, and steering connections from the rear end of said draft bar to the free ends of said arms, said steering connections having ball and socket joints.

lems in mechanical engineering and mechanical skill, not presented by motor car construction. However, regardless of that fact, the adaptation of the steering mechanism of an automobile to a trailer truck, and the control of that steering mechanism by a draft bar connecting with the steering mechanism and attached to a motor truck, instead of by a steering wheel in the hands of an operator, is at least analogous, if not the same art.

Even if this conclusion were not the only logical one to be drawn from the evidence in this record relating to the similarity between the steering mechanism of an automobile and the steering mechanism of a trailer truck, wholly apart from the means of controlling that mechanism either by a steering wheel or by a draft bar, nevertheless such conclusion is fully supported by the evidence of Mr. Ferris that will be considered more at length later in this opinion, in reference to the application of the knowledge he had acquired by his prior automobile experience, to the design of defendant's draft bar in December, 1916. For this reason we cannot concur in the claim of counsel for the appellant that the prior patent automobile art, in so far, at least, as it relates to steering mechanism, has no application to the present suit.

[2] It is contended, however, that the draft bar, described in this patent and covered by claims 5 and 6, is new and novel in the art, in that it projects rearwardly and downwardly, so that its rear end will lie in substantially the same horizontal plane as the free ends of the steering arms, to each of which free ends it is attached by separate steering connections having ball and socket joints.

The rearward extension of the draft bar and its connection with the steering arms to the rear of the axle, instead of in front of it, present no new or novel feature; therefore claim 5 is invalid. Eccard & Smith, No. 1,117,944; Brown, No. 41,476; Hendrickson, No. 1,109,-752; Mason, No. 681,237. The novelty, if any, in the Hudson drawbar, must therefore consist in its downward extension to the same horizontal plane as the free ends of the steering arms, as described in claim 6.

It is the claim of the appellant that the invention consists in this specific type of drawbar combined with numerous other elements as stated in claims 5 and 6. The appellee admits that—

"There is an obvious advantage in so arranging the primary steering element that its directive force will be exerted on a horizontal line with the steering arm."

But it is claimed that this was accomplished by Dehn (German patent, 228,185), by bringing the steering arm up to a level with the draft bar; by Robin (British patent, 5,983), by means of a downwardly projecting part, either a part of or operatively connected with the draft bar or other primary steering element; in Eccard & Smith, 1,117,944, where the draft bar is free to move up and down in the rectangular frame built upon a tie rod connecting the two steering arms, and therefore exerts its effective directing force upon the tie rod in the same horizontal plane as the free ends of the steering arm; that the precise form shown by Hudson is found in Souther, No. 320,011, and Hen-

drickson, No. 1,109,752; and that the precise equivalent of the Hudson device is shown in Geiger, Eccard & Southerland, No. 903,185, and in Chrestenson, No. 1,068,737, where a downwardly projecting member attached to the draft bar in front of the axle brings the effective steering portion of the draft bar into substantially the same horizontal plane as the free ends of the steering arm.

By the downward projection of this draft bar to the rear of the axle Hudson accomplishes the same thing that Dehn accomplished by bringing the steering arms up to a level with the draft bar, that Robin and Mason accomplished by means of a downward projection operatively connected with the draft bar, that Hendrickson accomplished by a downwardly extending bolt from the rearwardly extending arm portion of the draft bar, and that Geiger et al. and Chrestenson accomplished by a downwardly projecting member attached to the draft bar in front of the axle, so that the directive force of the primary steering element would be exerted in a horizontal plane with the free end of the steering arm. Therefore it would appear that the Hudson method is no more than a clear equivalent of other well-known methods of construction disclosed by the prior art, to accomplish the same result.

The trial court, however, did not base its conclusion as to the invalidity of this patent solely upon the prior art, although it did hold that—

"The prior automobile art shows all drag links lying substantially in a horizontal plane and connections with the steering member made in that plane."

In that connection the trial court further held that—

"The desirability, if not necessity, for having the drag links horizontal, and the connection made in that plane, would be obvious, if not thus fully disclosed. The mechanical expedient of bending downward the rear end of the drawbar sufficiently to make such a connection is a matter of skill, obvious to any automobile engineer, and does not amount to invention."

This finding of the trial court seems to be fully sustained by the evidence of the witness Ferris, who testified that, when he designed the defendant's trailer in 1916, he had not at that time seen the Troy Wagon Works trailer, and had not seen the patent to Hudson, or any representation of the Troy trailer made in accordance with that patent. He further testified in the same connection that the standard type of drag link, which the defendant bought upon the open market, could not be used in any other position than in a horizontal plane with the free ends of the steering arms. This not only sustains the trial court in its findings that "the prior automobile art shows all drag links lying substantially in a horizontal plane and connections with the steering members made in that plane," but it also tends to show the necessity of bringing the portion of the draft bar to which these drag links were attached, by bending, projection, or otherwise, down to the level of the plane of the end of the steering arm, which fact was apparent to Ferris by reason of his former automobile experience.

[3, 4] It is insisted, however, by counsel for appellant that the tes-

timony of Ferris should have been wholly disregarded by the court for the reason that Ferris is secretary and treasurer of the Ohio Trailer Company; that the statement made by Ferris is self-serving, and not corroborated by any other evidence, and directly contradicted by Ferris himself in his testimony given in a former suit between these parties in relation to the same trailer. The fact that Ferris occupies an official position with the appellee does not disqualify him as a witness, nor require the court to disbelieve his testimony. If he testified differently in another suit, that fact should have been brought into this record by cross-examination, or in some other way, for counsel had no right to rely upon the recollection of the court as to the evidence in another case, nor expect either the trial court or this court to examine the record in the other case in order to determine whether the witness had in his testimony in this case contradicted statements made by him as a witness in that case. Not only that, but the witness had a right to have his attention called to these facts and explain any discrepancy between his testimony in the other and in this case, if it were possible for him to do so. Counsel for plaintiff in error, however, did not cross-examine this witness, nor does this record show that the witness ever testified in any other case. Therefore these objections to his testimony must be wholly disregarded.

It does appear, however, that the witness is corroborated by the blue print dated December 20, 1916, and the photographs, 4 and 5, which photographs show a portion of defendant's old factory vacated by defendant in 1917. This evidence of the drawing by Ferris of defendant's draft bar in 1916 is not offered to show anticipation in the prior art, of the Hudson patent, but rather for the purpose of showing that what is now claimed to be invention amounts to no more than the ordinary exercise of mechanical skill in meeting the obvious necessity.

[5] It is insisted, however, on the part of counsel for appellant that Ferris testified that this was obvious to him, because of his previous automobile experience as an automobile engineer; that by "experience" the witness clearly meant "experimentation," to ascertain how to make a drawbar that could work with such links; and that therefore the downward extension of this drawbar involves invention and is patentable. In reply to this it is sufficient to say that experience in a particular trade, profession, or calling does not necessarily mean experimentation with the particular thing under consideration. On the contrary, the language used by the witness is not subject to any construction other than that from his experience in that line of work the thing was obvious to him without any experimentation whatever. The term "obvious," as here used, does not mean that the thing must be obvious to men wholly unlearned and wholly inexperienced in the particular art to which the claimed invention pertains. What might be an obvious conclusion to a lawyer might not be obvious to a layman, and what "passeth the understanding of a lawyer" might be perfectly obvious to a mechanical engineer. Therefore, if this claimed invention was obvious to a mechanical engineer, or a skilled work-

man familiar with automobile and trailer truck construction, it is clearly within the meaning of the settled rule that the obvious is not invention.

[6] The Eccard & Smith patent, No. 1,117,816, relates to improvements in reversible trucks or dump wagons of the type which employ a pivoted draft bar at each end thereof, which draft bar is connected to the wheels for steering purposes, and also may be locked to the wagon bed or frame in a central position when the truck is being drawn from the opposite end. Claims 6, 7, and 8 are relied upon by the appellant. These claims are similar in their nature; claim 8 being, perhaps, a little more comprehensive than either of the other two. This claim reads as follows:

"8. In a vehicle of the character described, a main frame, a draft bar pivotally connected to said main frame at its rear end, an automatic latch for locking said draft bar to said frame near its front end in a central position with respect to said main frame, said draft bar having connections with the steering wheels of said vehicle, and means for holding said latch in inoperative position to permit said draft bar to steer said wheels."

There are other claims describing this automatic locking device in detail, but it is not seriously contended that the automatic locking device used by the defendant is an infringement of appellant's automatic locking device, separate and apart from the combination in which it is found. On the contrary, it is the specific claim of the appellant that the invention lies in the combination and not in the lock per se, and that therefore the introduction of any automatic locking device into this combination described in the specifications and claims, co-ordinating in like manner as appellant's automatic lock with the other elements of the combination, would constitute infringement.

In reply to this it is insisted upon the part of the appellee that there is nothing new or novel in appellant's combination, for the reason that automatic locks for locking the draft bar of vehicles of the character named in the patent in suit and other wheeled vehicles of a similar nature are old in the prior patent art. In support of this contention a large number of patents relied upon by appellee are cited. The steering mechanism of a trailer truck or dump wagon, that is associated in this combination with appellant's automatic locking device, is admittedly old in the art. Nor is there anything new or novel in the idea of locking the rear draft bar to the wagon bed or frame in a central position when the truck or wagon is being drawn from the opposite end. On the contrary, this is absolutely essential to its successful operation. Nelson, 793,799; Geiger, Eccard & Southerland, 903,185; Chrestenson, 1,068,737.

However, in these patents no automatic lock is used; but the locking is accomplished, as stated in the application for this patent, by the insertion of a pin or other means through suitable apertures through the draft bar and some parts connected with the vehicle body.

Souther, 207,453, relates to a reversible trailer truck for street cars. It appears from the evidence of the expert witness Browne, and also from an examination of this patent itself, that it contains fundamentally the same character of locking mechanism used by the defendant,

which consists of two latches, which co-operate directly with a hump or boss on the drawbar. Souther has two pivoted latches, which, when released by pressure of the foot of the driver, permits the drawbar to swing free, but when it comes back to a central position it is again automatically locked.

The expert witness called on behalf of the appellant testifies in reference to this patent that the action is automatic in closing, but there are no means for holding the lock out of operation except the foot of the motorman; that, because this feature is lacking, Souther's automatic lock would not be suited for use in a trailer. It is clear, however, that the idea of the automatic lock as applied to the steering mechanism of a trailer truck is fully disclosed by Souther, and that the mechanical means for holding this lock out of operation was not used, because an operator was always present on these trailers, and for that reason no such device was necessary. Therefore the most that Eccard & Smith could claim over Souther is this means for holding the automatic locking device out of operation when it is desired that the draft bar should swing free, but this is also old in the art.

In reference to this, the expert witness Browne testified:

"But it was old in the art for quite analogous purposes to make provision for doing just that thing; that is, for locking the latch or locking bolt in its unlocked position, something of the sort seen in doors, such as the door in my own office building, which has a spring lock to-day; but there is a little catch on the lock, which I move by hand, so as to hold that spring lock out of action."

In the Eccard & Smith patent it is also necessary for the operator to use his hands in placing the means provided for fastening their automatic lock in such position that it will not function.

Knupfer, 410,692, is for a seed-drilling machine, having an automatic locking device, which consists of a bolt actuated by a spring, which corresponds with a notch carried by the drawbar, so that when the spring bolt is free to move, and the notch is brought into register with the bolt, the tongue or drawbar will be automatically locked in central position. It is also provided with means for holding this automatic locking device out of operation. While this machine is being used in the field in the drilling of grain, it is desirable that the tongue or draft bar should swing freely, and therefore the lock is not released or used in the actual operation of the machine, except in turning a corner, or in moving the machine on the road, or from one field to another. It then becomes necessary that the tongue should be so locked to the body as to provide a steering means other than the mere draft. To that end the automatic locking device is released, and functions as in Eccard & Smith, to lock the tongue or draft bar in rigid relation to the frame or body.

Hurd, No. 283,712, relates to the running gear for wagons which may be steered either by the link connections between tongue or draft bar and swivelly mounted wheels, or by the old-fashioned fifth-wheel construction. The steering mechanism includes an automatic lock that operates to fasten the two plates of the fifth wheel together while the wagon is being steered by the tongue or draft bar, imparting di-

rective motion to the swivel wheels through the link connection. When the operator desires to make a more abrupt turn than possible in this way, he can release this automatic lock by a foot treadle, thereby permitting the fifth wheel construction to operate. After the turn, and when the tongue or draft bar swings into central position, and the driver removes his foot from the treadle lever, the automatic lock again functions to unite the upper and lower part of the fifth wheel. There is also provision in this patent for automatically locking the tongue as it passes over the beveled surfaces of the front locking bar.

Heisey, 67,430, Eustis, 837,242, Ruffner, 154,915, Sattley, 629,875, and Goodhue, 1,068,334, relate to agricultural implements. Each of them contains an automatic locking device. No means are provided in either of these patents for holding the automatic locking mechanism out of operation, for the reason, as explained by appellant's expert witness Wagner, that "the time during which the locking mechanism is thrown out of commission is relatively short," and perhaps for the further reason that an operator is always present who can, by the means provided, release the automatic locking device and hold it out of operative engagement with the frame or body of the vehicle for the short time required to accomplish the purpose of its release.

It is insisted, however, on the part of the appellant, that all these patents are in a remote art, and have no application or analogy to trailer trucks. The Eccard & Smith patent, however, is not confined to trailer trucks, but to reversible trucks or dump wagons of the type which employ a pivoted draft bar at each end thereof, which draft bar is connected to the wheels for steering purposes and also may be locked to the wagon bed or frame in central position when the truck is being drawn from the opposite end. Later in the description in the patent the following statement appears:

"In reversible vehicles of this character, either motor trailer or horse-drawn trucks or dump wagons."

This language would seem to be sufficiently broad to include all forms of vehicle construction where the tongue or draft bar is required to swing free for one purpose of its operation, and to be locked or fastened to the frame or body of the vehicle for the accomplishment of another purpose.

In any event, it is clear that Souther and Hurd are within the identical art, although Hurd is not of the reversible type, or of a type that requires the rear wheels to be rigidly locked to the frame or body of the vehicle when drawn from the opposite end. Nevertheless the Hurd invention relates to substantially the same problem in the same art as Eccard & Smith. It is also apparent that agricultural implements, including a frame mounted upon wheels, with tongue or draft bar connected with and used as part of its steering mechanism, if not in the same art, are at least in such a closely allied art that prior patents in relation thereto must necessarily be held as anticipatory of similar inventions in relation to reversible vehicles described in Eccard & Smith, whether motor-drawn or horse-drawn trucks or dump wagons.

[7] It is further insisted, however, that, even though these patents were in the same or an analogous art, they have no application, for the reason that the automatic locks shown in the earlier patents are not found in the same combination as in Eccard & Smith, and that the Eccard & Smith patent is for a combination, and not for an automatic lock per se. The mere adaptation of an old element to a specific use is not invention, unless the combination of such old elements produce "a new result, or an old result in a new and materially better way." Frey et al. v. Marvel Auto Supply Co. (C. C. A. 6) 236 Fed. 916, 150 C. C. A. 178. It is clear from the evidence in this case that the automatic locking device of Eccard & Smith functions in identically the same way as the automatic locking devices in the prior patent art, and that the other elements of this combination produce no new or different result in combination with this automatic locking device than produced by these elements when locked by any other means. It necessarily follows that the combination of an automatic lock with the old steering elements of vehicles of the character described in this patent does not constitute invention. Heald v. Rice, 104 U. S. 737–755, 26 L. Ed. 910; Huebner-Toledo Breweries Co. v. Mathews, 253 Fed. 435-447, 165 C. C. A. 177; Turner v. Lauter Piano Co., 248 Fed. 930, 161 C. C. A. 48; Robinson v. Fabric Co. (D. C.) 248 Fed. 526; Overweight Counter-balance Elevator Co. v. Machine Co., 102 Fed. 957, 43 C. C. A. 80; Self Sealing Can Co. v. Hocker (C. C.) 136 Fed. 418; Warren Webster & Co. v. Dunham, 181 Fed. 836, 104 C. C. A. 346.

[8] It is further insisted that the patent prior art has no application, for the reason that no means are provided for holding the automatic lock shown therein out of operation other than by the hand or foot of the operator.

[9-11] Knupfer, however, does show such means; but, aside from that, it is not only common knowledge, but shown in this record by the uncontradicted evidence of the expert witness Browne, that—

"It was old in the art for quite analogous purposes for making provisions for doing just that thing, that is for locking the latch or locking the bolt in its unlocked position." Warns, 991,199.

Therefore, even if Knupfer were to be entirely disregarded, the combination of these old elements including adequate means for holding the automatic locking device out of operative engagement, does not amount to invention, even though that means may be in and of itself new and novel, and entitled to separate and distinct patent protection or protection in combination with these old elements as to that peculiar or novel means employed for that purpose but certainly not as a monopoly covering such combination with any and all forms of automatic locks.

For the reasons above stated, the decree of the District Court as to both patents is affirmed.